## McROBERTS v. McROBERTS.

No. 25042.    Oct. 29, 1935.

Rehearing Denied May 26, 1936.

Davidson & Williams, for plaintiff in error.

West & Davidson, for defendant in error.

PHELPS, J. In March of 1930, the plaintiff, Pauline McRoberts, and the defendant, Robert McRoberts, were husband and wife, living separately and apart in the state of Georgia. She had sued him for divorce and the action was pending when they entered into the following contract:

"This contract made and entered into this March ___, 1930 by and between Robert Ware McRoberts as party of the first part, and Pauline Carter McRoberts as party of the second part,

"Witnesseth: Whereas, Said parties are now husband and wife by reason of their marriage in due form of law, and Whereas, The said parties are living in a bona fide state of separation, and there is now pending in the Superior Court of Dekalb County an action for divorce in which second party is plaintiff and first party is defendant, and Whereas, In said suit second party sues for temporary and permanent alimony, and Whereas, Both parties desire to settle all

questions of alimony by an agreement between themselves, which agreement they desire to be made the order of the court, Now, Therefore, In consideration of the premises the said parties do agree: 1. First party to pay to second party alimony in the sum of one hundred fifty dollars ($150.00) monthly, payable $75.00 on the third (3rd) and eighteenth (18th) day of each month hereafter during the life of said contract. 2. Second party to accept the sum so paid under the terms hereof in complete satisfaction and discharge of all claim for alimony, temporary or permanent, which second party may have against first party, past, present and future. 3. The alimony herein contracted for shall continue and be paid according to the terms hereof so long as second party shall live and remain single, and in the event of the death of the first party this contract shall be binding upon first party's estate, his heirs, executors and administrators, during the life of second party or until her remarriage. 4. It is further agreed that on the execution of this contract by the parties that the same be made the final order of the court concerning the payment of temporary and permanent alimony claimed in said suit aforesaid. In Witness Whereof, these presents are executed under the hands and seals of both parties hereto, the year and day first above written.

"(Signed) Robert Ware McRoberts (Seal)
"Party of First Part

"(Signed) Pauline C. McRoberts (Seal)
"Party of Second Part

"Signed, sealed and delivered in the presence of
"B. F. Wells, Jr.
"Francis Dwyer

"Edgar Craighead, Atty at Law for Pauline C. McRoberts.

"Neal G. Goss, Atty at Law for Robert Ware McRoberts."

In January, 1933, the plaintiff, Pauline McRoberts, filed her petition in the district court of Tulsa county, Okla., against the defendant, Robert McRoberts, in which she sought a judgment of $4,000 against him on certain notes he had executed to her, and he confessed judgment thereon, and no question concerning that phase of the matter is before us. In her second cause of action, however, she set forth the foregoing fact of former marriage, the execution of the above contract, and an allegation that the Georgia court granted her the decree of divorce prayed for, and therein ordered payment of the alimony contemplated in the contract; that the defendant had paid "all payments accruing prior to the month of December, 1931, on the contract hereinbefore set forth,"

but that subsequently various defaults occurred, whereby the defendant owed her, to the date of suit, $1,652 "under the contract hereinbefore set forth"; wherefore she prayed judgment for the amount of the unpaid installments on the contract. Said petition was not an action on the foreign judgment, and it is expressly stated in plaintiff's brief that this is an action on the contract.

The defendant appeals from an order of the trial court overruling his demurrer to the second cause of action.

Logical discussion of the law involved herein requires that we first consider and determine the purpose of the contract in suit. Considering said contract either in its separate parts or as a whole, it is apparent that its purpose was intended as nothing more than a guide to the Georgia court on the issue of the amount of alimony to be awarded plaintiff in the divorce case. The preamble so provides, and, after setting forth that the action for divorce was pending, and that they desired to settle the question of alimony by an agreement between themselves, they expressly state their desire, in the following words: "which agreement they desire to be made the order of the court."

The word "alimony" is used throughout, and is repeatedly referred to as "temporary or permanent." Section 4 provides:

"It is further agreed that on the execution of this contract * * * that the same be made the final order of the court concerning the payment of temporary and permanent alimony claimed in said suit aforesaid."

The contract was also witnessed by the attorneys for both parties, apparently the attorneys in the divorce case. It can be construed as nothing other or greater than the agreement of the parties as to the amount of alimony to be awarded in case, and in case only, that the court should award alimony, and such was its purpose.

The next question to consider is the effect of such a contract. The rule of law is universal that such a contract is not binding on the divorce court, and that the court may ignore it if it does not conform to the equities in the case. 2 Nelson on Divorce and Separation, 915; Wheeler v. Wheeler, 167 Okla. 598, 32 P. (2d) 305. They are merely stipulations, having somewhat the same effect as an oral agreement of the parties, made in open court, for the purpose of dispensing with proof. If they are fair and are not made for the very purpose of obtaining a divorce, courts usually welcome

such agreements and shape that part of the judgment concerning alimony in conformance therewith, otherwise the courts refuse them entirely and proceed to award alimony and property as if no such agreement had been effectuated.

Another approach to the solution of the exact effect of such a contract is to consider whether the plaintiff could sue on it if the court had refused to grant a divorce. It is obvious that she could not, for the contract does not partake of any of the elements or identity of a separation agreement; the whole thing is bottomed, predicated upon, and pointed at the pending divorce proceeding and is dedicated to the proposition of eliminating controversy over that issue in the trial of the divorce action. On the other hand, let us assume that the court granted the divorce but, not feeling bound by the contract, awarded $75 monthly, or $300 monthly: it is obvious that the plaintiff could not then later sue on the contract for the difference between the $75 awarded and the $150 contemplated in the contract, nor could the defendant insist upon paying only $150 a month, if the award had been $300, on the contention that he had contracted to pay only $150, and therefore was not bound by the decree. It is thus apparent that if the effect of the contract is enlarged to any greater field than that of assistance and aid to the court in the determination of the immediate controversy, we are at once confronted with an entangling maze of legal contradictions and incongruities.

The next question, then, is: When does such a contract become extinguished? The logical answer seems to be that it becomes extinguished when, as in the case of other contracts, it has served its purpose. We have already defined its purpose. Our view of the matter is that when the property relationship and duties of the parties were considered by the divorce court, including not only their own ideas thereof as expressed in the contract, but also all surrounding circumstances, and on those facts the decree was formed and entered, the contract, if it may be called such, had served its purpose and thereby became extinguished.

At this point it should be emphasized that when we speak of extinguishment we do not mean merger. Extinguishment connotes the end of a thing, precluding the existence of future life in the thing. In merger there is a carrying on of the substance of the thing, except that said substance is merged into and becomes a part of a separate thing

with a new identity. We do not hold that this agreement of the parties became "merged" into the divorce decree. There is no such thing as a divorce decree based on a contract to divorce. The parties may no more bindingly contract before divorce, as to what their future property rights under a divorce decree shall be, than they could contract as to whether they would be bound at all by said decree, even as to divorce itself. Thus it was not a merger, but a complete and final extinguishment of the contract in suit which occurred upon the rendition of the divorce decree awarding alimony payments.

The conclusiveness of a divorce decree on the rights of each spouse in and to the property of the other is expressed in our section 673, O. S. 1931, reading:

"A divorce granted at the instance of one party shall operate as a dissolution of the marriage contract as to both, and shall be a bar to any claim of either party in or to the property of the other, except in cases where actual fraud shall have been committed by or on behalf of the successful party."

The foregoing provision is to be found in the statutes of most states. It is usually held to mean just what it says. The law does not permit either party to conceal a relevant right of action against the other party, or fail to bring it to light in the divorce action, and then assert it in a subsequent action, much less relitigate a right which was not only properly but actually a vital issue in the divorce action. See 19 C. J. 295, and cases cited. The Supreme Court of the United States, in Bates v. Bodie, 245 U. S. 520, 62 L. Ed. 444, L. R. A. 1918C, 355, had before it a situation involving the same principle. It was there said:

"The case is not in broad compass and depends upon the application of the quite familiar principle that determines the estoppel of judgments, and the principle would seem to have special application to a judgment for divorce and alimony. They are usually concomitants in the same suit,—some cases say must be,—or, rather, that as alimony is an incident of divorce, it must be awarded by the same decree that grants the separation. And it is the practice to unite them, as alimony necessarily depends upon a variety of circumstances more adequately determined in the suit for divorce; not only the right to it, but the measure of it,—all circumstances upon which it depends then naturally brought under the view and judgment of the court. Whether, however, the right to it should be litigated in the suit for divorce, or may be sought subsequently in another, the principle is applicable that what

is once adjudged cannot be tried again. And this court has established a test of the thing adjudged and the extent of its estoppel. It is: If the second action is upon the same claim or demand as that in which the judgment pleaded was rendered, the judgment is an absolute bar not only of what was decided, but of what might have been decided. If the second action was upon a different claim or demand, then the judgment is an estoppel 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered'."

It was held in Roe v. Roe, 52 Kan. 724, 35 P. 808, 39 Am. St. Rep. 367, that:

"The final judgment in an action granting a divorce settles all property rights of the parties, and is a bar to an action afterward brought by either party to determine the question of alimony, or any property rights which might have been settled by such judgment."

See, also, Ford v. Ford, 25 Okla. 785, 108 P. 366, 27 L. R. A. (N. S.) 856.

The difficulty encountered by plaintiff in enforcing the alimony decree is no reason for losing sight of the principle of law that when a matter is once adjudicated it remains adjudicated, in the absence of an appeal. A somewhat similar case was Finley v. Finley, 174 Okla. 457, 50 P. (2d) 643. In that case, however, the agreement was one of separation. It was held that after submitting the contract to the divorce court, and obtaining a decree embodying the same provisions as the contract, the plaintiff could not subsequently maintain an action on the same contract. The holding in that case was not based on the doctrine of merger, but on the principle of extinguishment, in that both by reason of the nature of the contract (one for separate maintenance only) and by reason of the legal effect of the divorce decree, there was no further contract to enforce.

It was stated in the beginning of this opinion that the petition was based upon the contract and not upon the foreign judgment. Such is the theory of both parties. It is therefore not incumbent upon us to determine whether the petition stated a cause of action on such foreign judgment. An Oklahoma judgment decreeing alimony without limitation in gross or time of payments is void and unenforceable in this state. The Georgia law on that point is not set forth by the parties. Had the plaintiff contended that the petition stated a cause of action both on contract and on the foreign judg-

ment, then, failing to plead that such unlimited alimony decree is valid in Georgia, we would have to assume that the law in Georgia is the same as the law in Oklahoma. Harn v. Cole, 20 Okla. 553, 95 P. 415; Scanlon v. Klopfenstein, 152 Okla. 162, 3 P. (2d) 869. In that case we would be forced to sustain the demurrer, regardless of whether the petition was drawn on contract or on foreign judgment. And such action of ours could not and would not prevent the plaintiff from reforming the Georgia judgment to comply with the law. The question of what is the law in another state is always a question of fact in the trial of any action in this state tried under the laws of this state. The question is not now before us, and we do not decide, whether, if unlimited alimony payments are valid in Georgia, we will permit enforcement thereof in this state, in compliance with the full faith and credit clause of the federal Constitution, art. 4, sec. 1. We think the plaintiff should be permitted to amend her petition, if that is the case, and we reserve such question for a future decision if necessary.

The judgment is reversed and the cause remanded, with directions to sustain the defendant's demurrer to the second cause of action in the petition, and permit amendment of the petition, if the plaintiff so desires.

McNEILL, C. J., and RILEY, BUSBY, and GIBSON, JJ., concur.