BRANNON v. BRANNON.

No. 35364.   Oct. 14, 1952.

Rehearing Denied Nov. 25, 1952.

Application for Leave to File Second Petition for Rehearing Denied Dec. 9, 1952.

*250 P. 2d 447.*

Leslie Webb, Tulsa, for plaintiff in error.

W. S. Myers, Tulsa, for defendant in error.

GIBSON, J. This is a divorce action in which judgment was rendered July 31, 1951. At the time of the trial plaintiff was 63 years of age and defendant 67 years.

The chronological order of events terminating in this litigation is as follows: The parties started keeping company together in 1946. At that time de-

fendant was a married man and the father of six children. Plaintiff was a divorcee five times married. In September, 1946, plaintiff purchased the real property involved in this appeal, at a price of $5,500. Defendant signed a note with plaintiff for a part of the purchase price. Plaintiff had an adult son, W. C. Warren, who advanced to his mother $2,600 used in improvement of the property, upon which was a 13-room house, cut up into apartments. It was a rental property. Later she executed a warranty deed conveying the property to her son, W. C. Warren. Beginning in 1947 plaintiff and defendant traveled together throughout Southwestern United States, for eight months. Defendant's former wife sued for a divorce and was granted a decree. On the following day, February 25, 1948, plaintiff and defendant were married at Denison, Texas, and later returned to live in Tulsa. On December 5, 1949, defendant paid W. C. Warren $1,000 and turned to him certain furniture, which Warren says paid him for his equity in the property, and on that date Warren, at defendant's suggestion, executed a warranty deed conveying the property to plaintiff and defendant as joint tenants with the right of survivorship. This action was commenced April 16, 1951, and the parties had lived together until about two months prior to that date.

The property, which is the subject matter of the controversy on this appeal, is an inside lot in block 123 of the Original Town of Tulsa. The apartment house is an old building situated near the front of the lot. On the rear was a small residence, to which defendant moved on the separation of the parties. While they were living together defendant built a cement garage facing on the alley which he used as a workshop. He was a master plumber.

The evidence is uncontroverted as to the foregoing facts. Otherwise, the testimony of plaintiff and defendant is conflicting in nearly all details.

Plaintiff testified to various acts of cruelty which she had alleged as grounds for divorce; that when she purchased the property she paid down $1,800 from the profits she had made in the sale of another residence; that she borrowed money from a Tulsa bank to pay for labor in making improvements on the property; that she later borrowed $5,500 from a building and loan association at Claremore from which she paid the balance of the purchase price; that defendant signed the note with her; that her son let her have $2,600 used in improvements; that she paid the bank with her own funds and had made payments on the existing loan from her rents; that her husband had made some of the improvements but she paid for the materials.

To the contrary, the defendant testified that he had furnished all of the money for the purchase and improvement of the property and that plaintiff had invested none of her own funds; that if plaintiff had any money of her own, he didn't know it; that he had given plaintiff the money with which she paid the materialmen; that he had paid plaintiff's son for his equity; and that some of his payments were made before the marriage and some after.

Defendant testified that he had $12,000 when the parties were married, that all had been spent, and he produced a statement of a bank in Wichita, Kansas, showing a deposit of that amount and later withdrawals.

Plaintiff testified that she had $6,700 of her own money at the time of the marriage, but had nothing at the time of the trial except rentals from the property. On cross-examination she said she had kept a part of the money concealed in a dresser drawer and some of it in a mattress and in pillows, and neither her husband nor her son knew she had it.

The parties and certain real estate dealers testified as to the present value of the property, their estimates ranging from $8,000 to $20,000.

Such conflicting evidence raises an issue of fact as to whether the property was the separate property of plaintiff or jointly acquired by the parties during coverture.

In granting the divorce at the first hearing the court said:

"The Court: Gentlemen, I am ready to decide this case. There is serious doubt in the court's mind if there is sufficient evidence to justify granting either one of these parties a divorce but, frankly, I can see no good reason for continuing this alliance. I am going to find there is sufficient evidence to justify granting a divorce and give the woman the benefit of the doubt and grant it to her.

"I am of the opinion that the defendant's money bought and furnished the house and also of the opinion that about half of that though was furnished in this old gentleman's courting days and I am not going to give that back to him."

The court then awarded plaintiff all of the furniture and gave each party an undivided one-half interest in the property, and allowed plaintiff $250 attorney fees. Later, on authority of Kupka v. Kupka, 190 Okla. 392, 124 P. 2d 389, the court of its own motion vacated the decree and continued the cause for evidence concerning an equitable division of the property.

After hearing the evidence the court granted plaintiff a divorce; gave her the furniture in the apartment house, and allowed her an attorney's fee of $250, but refused to allow any additional attorney's fees. The court found that the real property was jointly acquired during coverture, and decreed that plaintiff be the owner of the west 86 feet of the lot with all improvements thereon, which included the apartment house, and that defendant be the owner of the east 56 feet of said lot with all improvements thereon, which included the workshop, and that each party be given a perpetual easement over the real property for the purpose only of establishing and maintaining public utilities.

The plaintiff appeals, contending that the court erred in the division of the property and in holding that it was jointly acquired during coverture. It is urged that plaintiff's deed to her son was in fact a mortgage to secure money loaned, and that the son held a bare legal title and could not divest plaintiff of her property and convey the title to the parties jointly.

The evidence as to the intent and purpose of the parties in the execution of the deeds from mother to son, and from the son to the parties as joint tenants, is in great conflict. In rendering his judgment the court said:

" * * * So, the only thing the Court is concerned about is an equitable division of this property. Now, on December 5, 1949, this property was deeded to F. T. Brannon and Edna Brannon, with right of survivorship, by W. C. Warren, the son of the plaintiff. I am not going to permit them to convince this Court that he should ignore this deed on their testimony and statements that it was only a part of a scheme that they had all entered into to deceive the District Court of Tulsa County in another litigation pending in this Court at a different time and for the purpose of cheating and defrauding the creditors and so forth. I am going to give full faith and credit to the deed and hold by virtue of this deed they jointly acquired the South fifty feet of Lot Five, Block 123 Original Town, now the City of Tulsa, Oklahoma, according to the recorded plat thereof."

In Chamberlain v. Chamberlain, 121 Okla. 145, 247 P. 684, a case in many respects similar to the instant case, this court said:

"As the evidence was conflicting, we can use no language more forceful in expressing our views here than that used by this court in Stovall v. Stovall, 29 Okla. 125, 116 P. 791, when it was said:

" 'Actions, conduct, and appearances often speak louder than words in cases of this character. Often, if not always, the case must be decided on the conflicting evidence of the intensely interested parties, and in such cases

their personal presence, appearance, and demeanor are of supreme importance, as these physical facts cannot be shaded to fit the occasion, and in such a situation poor, frail human nature is subjected to one of its severest tests.'

"And since the trial court saw and heard the witnesses upon the witness stand and had an opportunity to observe their conduct and demeanor, it was in a better position to reach a correct conclusion as to the equities than we are when we merely read the testimony in the record, and after having so observed the conduct of the witnesses and upon the evidence reached its conclusions and made its findings thereon, we cannot say that such findings and the judgment rendered thereon are contrary to the clear weight of the evidence, and, therefore, are not disposed to disturb the same here."

We have examined this record and find that there is evidence to reasonably sustain the finding of the trial court that the property was jointly acquired. It is significant that plaintiff produced the joint tenancy deed and that for more than a year after its recordation these parties lived together and worked together in improvement of the property, with no complaint or contention being raised by plaintiff that she was the sole owner of the property until this action was commenced. It is not denied that defendant paid the entire consideration to W. C. Warren when the joint tenancy deed was executed. At the conclusion of the hearing in which the divorce was granted the trial court said, as quoted above, that defendant's money bought and furnished the house.

The trial court in the judgment awarded to plaintiff approximately two-thirds of the real estate and all of the furniture in the apartment house. Plaintiff asserts that such decision is erroneous and in violation of 12 O.S. 1941 §1278, and cites Champion v. Champion, 203 Okla. 105, 218 P. 2d 354; Fiedler v. Fiedler, 47 Okla. 66, 147 P. 769; Turlington v. Turlington, 193 Okla. 421, 144 P. 2d 957; Peters v. Peters, 172 Okla. 575, 46 P. 2d 487.

Such cases are cited on plaintiff's theory that the real property was her separate property acquired by her before the marriage. But we have seen that the court refused to follow that theory and found that it was jointly-acquired property. Therefore, the cited cases are not applicable. Under the statute the court must set aside to the wife her property acquired before marriage, "not previously disposed of". The same section provides that as to property jointly acquired by the parties during marriage, the court shall make such division as may appear just and reasonable.

"What constitutes an equitable division of jointly-acquired property is to be determined from the circumstances surrounding the acquisition of property, the conduct of the parties with relation thereto, and in making such determination a wide discretion is vested in the trial court." Turlington v. Turlington, 193 Okla. 421, 144 P. 2d 957.

This court will not reverse a decree dividing jointly-acquired property unless it is contrary to the clear weight of the evidence. Nelson v. Nelson, 175 Okla. 275, 52 P. 2d 786.

Plaintiff contends that all money spent on the property by the defendant, both before and after the marriage, were gifts to the plaintiff. It might be said that when plaintiff deeded the property to her son the transaction constituted a gift to him. When asked her reason for executing the deed she replied:

"Well, that is the only child I had and I just thought if I was to pass on or anything happened to me, that it would all be settled and fixed. I was going with Mr. Brannon at that time and I just put it in his name."

W. C. Warren took possession of the property, collected the rents and paid installments on the loan and other bills. He lived in the apartment for some time. For more than a year he asserted an equity in the property until he was paid the amount of his demand by the defendant. All essential elements of a

gift existed. There was no evidence that plaintiff contended that her deed was a mortgage until this litigation arose.

Finally, plaintiff says that the court abused its discretion in refusing to award plaintiff fair and reasonable attorney's fees, and that the amount allowed is grossly inadequate, and she has filed an application for fees in this court. In the judgment the court awarded plaintiff the sum of $250 for services rendered to and including July 13, 1951, and refused allowance of any additional sum. Plaintiff had three different attorneys in these proceedings, and there is testimony that defendant paid the first attorney $50, in addition to the fee allowed by the court.

Under 12 O.S. 1951 §1276, the trial court may allow the wife a reasonable attorney's fee considering the respective parties and the means and property of each. What constitutes a reasonable fee is largely in the discretion of the court. In determining the amount of a reasonable fee the ability of the husband to pay is one of the factors to be considered. Richard v. Richard, 142 Okla. 302, 286 P. 900.

In discussing the fee the trial court said: "The court finds that $250 allowed heretofore is ample and reasonable and as much as the defendant is able to pay in this case." The record reveals that defendant was 67 years of age at the time of the trial and was unable to do manual labor because of his poor health; that he owed debts secured by mortgages on his two motor vehicles and was indebted to the Federal Government and the state on back taxes.

We cannot say from this record that the action of the court in refusing to allow additional attorney's fee is unreasonable.

Affirmed.

WELCH, CORN, JOHNSON, and BINGAMAN, JJ., concur.