**James D. MILLS, Appellant,**

v.

**Mary Thomas MILLS, Appellee.**

**No. 43413.**

Supreme Court of Oklahoma.

June 26, 1973.

John Chiaf, Oklahoma City, for appellant.

James A. Peabody, Jack R. Durland, Jr., Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellee.

DOOLIN, Justice.

The pleadings and facts in this case frame for us, among other issues, a question of first import:

Are the declaratory judgment statutes available for the determination of rights established by final decree entered by a court of competent jurisdiction? (12 O.S.1971 § 1651 et seq.)

The Wife, plaintiff, and the Husband, defendant, were divorced October 31, 1952, in the District Court of Oklahoma County; and as a part of the divorce proceedings the parties had executed a contract and property settlement covering real and personal property located in at least two counties in Oklahoma, which had been accumulated by the parties during coverture. Both parties agree that the contract was incorporated in the decree of divorce, by the trial court in October of 1952.

Among the various tracts of land described in the contract was:

Lots 19, 20, 21, 22 and the N20′ of Lots 23 and 24, Wert's Addition to Oklahoma City, Oklahoma,

which was incorporated into the decree and set over to the parties by the property settlement in the following manner: (We substitute H for Party of the First Part and W for Party of the Second Part):

"H shall have the control and management, and shall hold the title thereto, subject only to the right of W to part of the net rental and part of the net sale price, as herein provided, and H shall have sole discretion in the sale of said property and shall have the sole right and discretion in the leasing or renting of said property, and shall have the right to convey said property without the joining of W, provided, that any sale made shall be for an adequate consideration, and provided further, that H shall have and receive and keep all rents and income from said property, paying all taxes, expense of upkeep and any other cost and expense that may arise, without claim of W thereto, for a period of eight (8) years from this date, or for the period of time that the sons of the parties are in school pursuing their education and H is paying all their expenses and maintenance. At the expiration of eight (8) years from this date, or at such time as the sons of the parties have completed their education, whichever occurs first, H shall pay over to W—half of the net rents and income from the said property as said rents and income is collected and received, and in the event H shall sell the said property, at any time from and

after this date, W shall be entitled to receive one-third of the net proceeds of the sale thereof."

Plaintiff, Wife, also sought an accounting from the Defendant, Husband, as to rents and profits from the real premises heretofore described. In addition to the rents and profits from last mentioned premises, the evidence as developed shows acquisition of adjoining property by second wife of Husband.

Wife's Petition seeking an accounting, determination of her interest in real property, costs, etc., was tested by Husband's demurrer and motion to separately state and number. The demurrer was overruled and the Husband was given time to answer. In his answer Husband made general denial, cited the divorce decree and incorporated property settlement and by way of separate defense denied that the Wife was entitled to determine her rights under the Decree or to seek construction of the same. Husband also denied that a justiciable controversy existed between the parties and that Plaintiff's interests were vested, undivided fee interests. He pleaded that he had previously fully accounted to the Plaintiff. At pretrial while discovery was continuing the parties agreed that Plaintiff sought (a) a declaratory judgment as to her property rights under the divorce decree and contract; and, (b) accounting of rental income from properties. Both parties announced at this time that they were ready for trial.

Trial was completed June 25, 1968. Findings of fact as requested by Wife and conclusions of law were entered by the court on July 16, 1968, the judgment and decree of the court being likewise entered on July 16, 1968. Such findings of fact and conclusions of law were favorable to the Wife; the court specifically found that a declaratory judgment action would lie and such statutes were applicable to interpret the decree of divorce entered in October of 1952. Further the court found and concluded that the property settlement executed by the Husband and Wife at the time of the original divorce had been merged in the decree. If then construed and interpreted the provisions of the original divorce decree fixing property rights in the parties and required the Husband to make certain payments to the Wife by way of an accounting.

We first address ourselves to the question of the applicability of declaratory judgment actions to decrees of divorce.

■ Early cases in Oklahoma, Finley v. Finley, 174 Okl. 457, 50 P.2d 643 (1935) and McRoberts v. McRoberts, 177 Okl. 156, 57 P.2d 1175 (1935) hold that settlement agreements between Husband and Wife are extinguished by entry of a divorce decree. They likewise preclude subsequent action based thereon holding that 12 O.S. 1971, § 1279 is a bar to any claim of either party to the property of the other. In *McRoberts,* supra, it was stated that "it (divorce decree) usually is held to mean just what it says." Later in Jones v. Jones, 442 P.2d 319 (Okl.1968) we held:

"Property settlement agreement incorporated by divorce decree acquired dignity of judgment and could be vacated or modified only by compliance with the statutes, 12 O.S.1971 §§ 1031 and 1038."

Since the trial court felt that the agreement was merged in the decree or incorporated therein, we will resist the opportunity of an exercise in semantics as to the difference between "merged" and "extinguished", but suffice it to say that no attempt by the Husband or Wife was made at the time of the decree of divorce to appeal or to vacate or modify the decree.

That the Federal statutes covering declaratory judgment actions have been used to interpret rights under an Oklahoma divorce decree is not questioned. Kelso v. Kelso, 10 Cir., 225 F.2d 918 and 246 F.2d 421. In passing we note that the Federal statute, 28 U.S.C. § 2201 et seq., predates the Oklahoma act and differs therefrom.

The briefs of the parties and our research indicate that there is conflict as to whether a court may entertain a declaratory judgment action to clarify or interpret

final decrees. We find no case that would allow a declaratory judgment action to lie as a substitute for an appeal.

In National-Ben Franklin Fire Insurance Co. v. Camden Trust Company, 36 N.J.Super. 249, 115 A.2d 589 (1955), the New Jersey court held that where a justiciable controversy existed then its declaratory judgment act would grant relief to determine the significance and effect of a judgment, citing cases from California, Connecticut, Kentucky, Ohio and Tennessee. This position is ably argued by the Wife and disputed by the Husband in their briefs.

The Wife argues that §§ 1651 and 1657 of Title 12 O.S.1971 have made decrees of courts of record in this state subject to the relief of a declaratory judgment action. She states that 12 O.S.1971 § 1657 specifically excepts from the Oklahoma act decrees of the Corporation Commission, Industrial Court, other agencies, boards, etc., and that therefore courts of record are subject to the act. Appellee Wife cites 82 C.J.S. Statutes § 382, page 893, in support thereof:

> "It is a general rule that an express exception excludes all others, that is, an exception in a statute amounts to affirmation of the application of its provisions to all other cases not excepted, but *it is always proper in determining the applicability of this rule to inquire whether, in a particular case, it accords with reason and justice.*" (Emphasis supplied.)

We do not believe that our statute, 12 O.S.1971 § 1657, intended to place final judgments of courts of record, the strong right arm of the judiciary, subject to declaratory judgment actions and remove all other administrative agencies, boards or commissions from such review. To do so, in our opinion, would unnecessarily prolong litigation and provide a new and novel method of modification or appeal. Such interpretation would radically extend procedures, not only in divorce cases, but all others, far beyond existing appeal statutes and statutes allowing vacation of judgments.

We are persuaded that the better reasoned cases concerning declaratory judgment actions hold that a judgment of a court of record may not be interpreted or clarified by the act, 22 Am.Jur.2d Declaratory Judgments § 17:

> "As a general rule once a controversy has been adjudicated by a tribunal having jurisdiction of the parties and the subject matter, the controversy is no longer an actual one and therefore cannot be the subject of a declaratory judgment action."

The Supreme Court of the State of Utah in Crofts v. Crofts, 21 Utah 2d 332, 445 P. 2d 701, held that there cannot be a declaratory judgment on a judgment, first because such an action was not within the terms of the Utah statute, similar to ours, and second:

> " . . . the finality of a judgment must be respected in order to insure the rights of parties."

The logical conclusion of allowing a declaratory judgment action to be applicable to final judgments and decrees is stated in Alabama Public Service Commission v. AAA Motor Lines, Inc., 272 Ala. 362, 131 So.2d 172, cert. den. 368 U.S. 896, 82 S.Ct. 173, 7 L.Ed.2d 93:

> "An action for declaratory judgment cannot be made a substitute for appeal; if the rule were otherwise, a declaratory proceeding would lie to determine whether a prior declaratory proceeding was erroneous, and there would be no end to that kind of litigation."

This is not a desirable result.

We believe, after a careful weighing of the record, that much of what the Appellee Wife really sought by her action was in the nature of appellate relief or a second trial of identical issues—previously adjudicated by the decree of divorce. Much of her evidence is likewise directed to her prayer for an accounting and to the values, and rentals of properties covered by the di-

vorce decree and the allocation of rental from the common tenant of the divorce properties in question and subsequently acquired properties of Husband's second wife.

The case before us most resembles Glassford v. Glassford, 26 Ariz. 220, 262 P.2d 382 (1953). In that case the husband and wife entered into an agreement during divorce procedures wherein the husband agreed to pay the wife a percentage of his gross income, the wife agreed to waive certain rights in real and personal property, and to execute releases and instruments concerning such property. Each released the other from any and all claims except for the payments provided in the agreement, such as in the instant case. They agreed further that the contract should be a part of any decree of divorce thereafter entered, and the agreement was incorporated and made a part of the final judgment. Several years after the final decree had been entered, the wife filed a petition seeking, among other things, interpretation and construction of this decree under the Arizona Declaratory Judgment Act. She also sought an accounting; but the parties made amiable disposition of the accounting and removed this issue from the case. The trial court held that a declaratory judgment was proper and proceeded to interpret and construe the final decree and ordered relief favorable to the wife. On appeal the Supreme Court of Arizona reversed and stated that its Declaratory Judgment Act did not authorize or contemplate interpretation or construction of a final decree:

" . . . The act (declaratory judgment act) does not expressly or by implication authorize a court to entertain a proceeding to determine any questions of the construction or validity of a judgment or decree of a court of competent jurisdiction, or to declare the rights or legal relations of interested parties thereunder. . . .

It is our conclusion, . . . , that our declaratory judgment statute does not contemplate a declaration of one's status or rights under a decree of a court of competent jurisdiction and that, therefore, plaintiff has not established a right to a declaratory decree."

The wife in *Glassford* claimed that her action was based primarily upon the contract and therefore was specifically covered under the Arizona Act. The Oklahoma Act, 12 O.S.1971 § 1651, also specifically mentions and refers to contracts as being subject to declaratory judgment action. In answer to the wife's argument advanced in *Glassford*, as to contract, the Arizona court stated at page 386:

"We have, . . . , conclusively settled that once the contract is merged into the decree, any action taken must be based upon the decree of the lower court and not based upon the contract of the parties.

In effect, the plaintiff in this action sued for declaratory judgment for the construction of a valid judicial decree of a court of competent jurisdiction and not as an action on the contract of the parties."

This rule and holding is identical to ours in Jones v. Jones, supra, and we arrive at the same conclusion, as in *Glassford*.

 We, therefore, specifically hold that Oklahoma's Declaratory Judgment Act, 12 O.S.1971 § 1651 et seq., may not be used to interpret or determine rights fixed by a final decree of a court of competent jurisdiction.

It likewise follows that the judgment of the trial court (including its findings of fact and conclusions of law) dated July 16, 1968, wherein the trial court attempts to define, fix, enlarge or detract from the interests of the Husband and Wife should be vacated and set aside.

We do not infer that either the Husband or the Wife has no remedy, but decline to comment thereon.

 The Husband next contends that judicial interpretation of 12 O.S.1971 § 1278 requires the trial court in a divorce

action to divide all real property in a property settlement into fee simple estates. The Husband argues that since the parties took a lesser estate in the real property by the 1952 divorce decree, this portion of the 1952 property settlement is void. In support of his argument, the Husband relies on the cases of Kupka v. Kupka, 190 Okl. 392, 124 P.2d 389; Brannon v. Brannon, 207 Okl. 529, 250 P.2d 447; Lawson v. Lawson, Okl., 295 P.2d 769; Blount v. Blount, Okl., 425 P.2d 474; and Williams v. Williams, Okl., 428 P.2d 218. While that line of authority clearly does support the rule, it is subject to the qualification that the parties to the divorce *may agree* to a division of the property in less than fee simple estates and thus waive the application of this statute. See *Lawson* and *Blount,* supra. In *Lawson,* supra, this court said:

". . . In many instances in divorce cases the parties are agreeable to the ownership of the property in common, as evidenced by contract. . . ."

and in the Syllabus by the Court:

"*Unless its application is waived by the parties the* statutory provision relating to division of the property between divorced parties intends that [the] property be so divided that the portion awarded to one spouse is free, from the claims or domination of the other, and there is a complete severance of common title."
(Emphasis supplied.)

We hold that since the parties entered into a property settlement agreement negotiated by parties and their attorneys and providing for division of certain properties in less than fee simple estates, that 12 O.S.1971 § 1278 does not apply to render such division void, for such parties have waived their rights to complain and the decree based thereon has long since become final.

We turn to the Wife's rights to an accounting.

Declaratory judgment actions and actions for an accounting are separate and distinct causes of action, albeit somewhat similar. It is axiomatic that an accounting action is based upon a relationship created by contract or supplied by a fiduciary relation (and thus created by law) between the parties. What acts of the parties or final orders of the trial court in its decree of October, 1952, have entitled the Wife to an accounting?

It is the agreement of the parties incorporated in the October, 1952, decree of divorce which supplies the necessary relationship, specifically:

"It is agreed between the parties that, as to the following described real estate, situated in Oklahoma County, Oklahoma, to-wit:

Lots Nineteen (19), Twenty (20), Twenty-one (21), Twenty-two (22) and the North 20 feet of Lots Twenty-three (23) and Twenty-four (24), WERTS ADDITION to Oklahoma City, Oklahoma, as shown by the recorded plat thereof,

(which is leased to Carnation Milk Company, or Carnation Ice Cream Company, and upon which there is a mortgage, the balance of which is approximately $6450.00), H shall have the control and management, and shall hold the title hereto, subject only to the right of W to part of the net rental and part of the net sale price, as herein provided, and H shall have sole discretion in the sale of said property and shall have the sole right and discretion in the leasing or renting of said property, and shall have the right to convey said property without the joining of W, provided, that any sale made shall be for an adequate consideration, and provided further, that H shall have and receive and keep all rents and income from said property, paying all taxes, expense of upkeep and any other cost and expense that may arise, without claim of W thereto, for a period of eight (8) years from this date, or for the period of time that the sons of the parties are in school pursuing their education and H is paying all their expenses and maintenance. At the expiration of eight (8) years from this date, or at such time

as the sons of the parites have completed their education, whichever occurs first, H shall pay over to W one-half of the net rents and income from the said property as said rents and income is collected and received, and in the event H shall sell the said property, at any time from and after this date, W shall be entitled to receive one-third of the net proceeds of the sale thereof."

In her Petition filed in the trial court, the Wife alleges that the Husband failed and upon demand refused to account to her for her share of those rentals; that the Husband, in exercise of control of the properties which produce said rentals had devised a complex plan for allocation of those rentals; and, that in the exercise of control of such properties a constructive trust for the benefit of the divorced Wife had been created. In the case of Vilbig Const. Co. v. Whitham, 201 Okl. 86, 201 P.2d 922 (1949), this Court held that the essentials of equitable jurisdiction in an action on account are the need of discovery, the complicated character of the accounts and the existence of a fiduciary or trust relation. Wife's evidence shows that these essentials are present in the case, and we hold that the trial court was correct in upholding and acting upon the Wife's prayer for an accounting. This Court has held that an accounting:

". . . contemplates a full and complete investigation of the mutual acts of the parties and the striking of a balance and rendition of judgment in favor of the party entitled thereto."

Clark v. Addison, Okl., 311 P.2d 256; Finley v. Concho Const. Co., Okl., 388 P.2d 863. In light of this doctrine we find that the trial court was within its authority in allocating or making Husband account to Wife for the rentals due under the 1952 divorce decree, and we will not reverse the findings of fact of the trial court unless clearly against the weight of the evidence,

Harris v. W. R. Hart & Co., 195 Okl. 5, 154 P.2d 759 (1944).

The Husband argues that the trial court's allocation of rentals due the Wife was improper in that it operates to deprive his current wife who is not a party to this action of some of the rentals due from properties owned by her and the Husband and rented in parcel with properties in which the Wife has some interest. This does not follow, since the only portion of the properties rented in parcel that the Husband can be compelled to pay the Wife's share of the rentals from is that portion he controls under the 1952 divorce decree. The 1952 property does not include any property in which the second wife has an interest and it is not burdened by payment to the first Wife. Although as a general rule all persons interested in the subject matter should be made parties to a suit for an accounting, 1 C.J.S. Accounting § 37(c)(1), the parties to this action have not shown us authority nor has our own research revealed authority which requires the owner of unburdened property to be made a party before relief can be granted a Wife whose cause of action is only against the Husband.[1] For this reason, the second wife is not, in our opinion, a necessary party.

Lastly, we deal with Husband's challenge to the October, 1952 decree of divorce as being void because the sums ordered paid were alimony and were not in a fixed amount or for a determinable time.

Examination of the record as to the last mentioned point reveals that the Husband produced no evidence in support of this proposition, and other than the decree itself and the contract executed by the parties there is a total absence of evidence in support of or in opposition to his proposition. We observe that at the time of pretrial hearing the parties did not frame or suggest to the court that such a question was to be decided. Examination and con-

---

1. In the case of Glassford v. Glassford, supra, the defendant's second wife was permitted to intervene and was not held to be necessary party.

sideration of the trial briefs of the parties and the depositions indicates that no serious attack upon the October, 1952, decree was made or contemplated under this proposition, until Husband's motion for new trial and his suggested findings of fact and conclusions of law were made. We further find that the Husband made no effort to amend his pleadings to conform to the proof of this point.

 In short, the record before us does not suggest a conclusion or finding that the decree of divorce was void on the grounds that the sums ordered paid by the Husband to the Wife was alimony, and as such void because the amount and duration thereof was not fixed and definite. Walker v. Walker, 310 P.2d 760 (Okl.1957):

"A case presented on appeal will be reviewed on the theory upon which it was presented to the trial court."

See Arnold v. Arnold, 194 Okl. 571, 153 P.2d 224 (1944):

"Matters which were not involved in trial court and may not properly be presented for first time on appeal will not be considered by [the] Supreme Court."

Husband's attack on the judgment of the court under this last proposition is obviously new matter not supported by the record and not presented for adjudication. The parties themselves at the time of pretrial agreed on the issues; they were (a) application of the Declaratory Judgment Act and (b) Wife's right to an accounting. Application of the Declaratory Judgment Act might be broad enough to grant relief to the Husband under this proposition; but, unfortunately for him, we have decided against the applicability of such Act to a final judgment of a court of competent jurisdiction. We also believe that when he concedes that he has granted an accounting in full, he concedes the legality of the decree in question. See also Mead v. Mead, 301 P.2d 691 (Okl.1956):

"On appeal by wife from judgment refusing to vacate judgment in favor of

husband in divorce action, Supreme Court would not consider pleadings of wife as having been amended to conform to the proof, where to do so would involve consideration of a ground of vacation, which was neither alleged in her pleadings nor urged at the trial, but was asserted for the first time in appeal brief in attempt to obtain reversal of the trial court's judgment."

From a consideration of the evidence and record as a whole, we hold that judgment based upon the Declaratory Judgment Act of the State of Oklahoma should be reversed with directions to vacate, and judgment for accounting should be sustained.

WILLIAMS, V. C. J., and IRWIN, BERRY, LAVENDER and SIMMS, JJ., concur.

DAVISON, C. J., and HODGES and BARNES, JJ., dissent.

BARNES, Justice (dissenting):

I cannot agree with that part of the Majority Opinion in which it arrives at the holding announced in the second paragraph of its syllabus that:

Final judgments and decrees of a court of competent jurisdiction may not be interpreted or clarified under the Oklahoma Declaratory Judgment Act, 12 O.S.1971, §§ 1651–1657.

I am of the opinion that said Act authorizes District Court actions for declaratory judgments clarifying and/or interpreting previous judgments in civil cases generally. But this is not to say that in such an action a previous judgment may be changed or modified, or that rights therein determined or fixed may be redetermined, refixed, or again adjudicated.

The present action evolved out of a factual background whose basic elements are as hereinafter described.

The former husband and wife involved in this case, sometimes referred to herein as "Mills" and "Mary", or "H" and "W"

while married, had two sons, and acquired several parcels of real estate, some in Oklahoma City and some in other areas of the State. Some of these properties were acquired in his name and some in hers. The only part thereof involved in this appeal consists of a lot purchased for $16,000.00 and located between Oklahoma City's North Western Street and Classen Boulevard, with a 100-foot frontage on Northwest 23rd Street, and a commercial building the parties constructed on it at a cost of $35,000.00. This property will be referred to as "the subject property" or "Parcel C".

After the couple separated, they executed a rather lengthy written contract, whose terms and conditions they therein agreed should become a part of any decree of divorce either might obtain from the other, if approved by the divorcing court. As to the subject parcel of property, the contract provided, in essential part, as follows (using the aforementioned initials "H" and "W" to designate the parties) :

H shall have the control and management, and shall hold the title to the property, subject only to the right of W to part of its net rental and part of its net sale price, as therein provided, and H shall have sole discretion in the property's sale and shall have the sole right and discretion in its leasing or renting, and shall have the right to convey it without the joining of W, provided that any sale made shall be for an adequate consideration, and provided further that H shall have and receive and keep all rents and income from said property, paying all taxes, expense of upkeep and any other cost and expense that may arise, without claim of W thereto, for a period of eight (8) years from this date, or for the period of time that the sons of the parties are in school pursuing their education and H is paying all their expenses and maintenance. At the expiration of eight (8) years from this date, or at such time as the sons of the parties have completed their education, whichev-

er occurs first, H shall pay over to W one-half of the net rents and income from the said property as said rents and income is collected and received, and in the event H shall sell the said property, at any time from and after this date, W shall be entitled to receive one-third of the net proceeds of the sale thereof.

Thereafter, on the same day the above described contract was executed (October 31, 1952), the District Court of Oklahoma County entered its decree in its Cause No. 74,783 granting H a divorce from W, after therein expressly approving said contract as describing an equitable division of the parties' property. At that time, this Parcel C was under lease to Carnation Ice Cream Company. The highest rental paid by Carnation under this lease was $442.00 per month.

Thereafter, Mills and his present wife, Mabel, acquired a part of two lots, with a 47-foot frontage (apparently adjoining Parcel C) on Northwest 23rd Street, which property will hereinafter be referred to as "Parcel D", and two lots adjacent thereto and hereinafter referred to as "Parcel E", with a 50-foot frontage on Northwest 24th Street.

When Carnation's lease on Parcel C expired on April 1, 1965, Mills also rented Parcel D to that Company for the months of April and May at a total rental (for the two-month period) of $2,400.00. Out of this $2,400.00, he allocated $400.00 for the rental on Parcel C. Under a new lease which Mills and Mabel entered into about this same time, they rented Parcels C, D, and E to Mills & Associates, Inc., under one and the same lease for a total net rental of $1,000.00 per month. Mills allocated this total sum to the three properties as follows: $400.00 for Parcel C, $200.00 for Parcel D, and $400.00 for Parcel E.

Soon afterward a dispute arose between Mary and Mills as to their respective rights in Parcel C, and in August, 1966, Mary commenced the present action as plaintiff against him as defendant.

In addition to the facts I have already mentioned, plaintiff's petition alleged that under the parties' aforementioned contract and divorce decree she was vested with an undivided one-third interest in the fee of the subject property (Parcel C),

"together with a vested incorporeal property right to one-half (½) of the net rents and income from said land from and after the expiration of eight years from October 31, 1952, or at such time as the sons of the parties had completed their education, whichever event occurred first. That the said vested one-third (⅓) interest in fee in the above-described property and the right to one-half (½) of the net rents and income therefrom as provided in said property settlement agreement and divorce decree were intended and are estates and incorporeal property interests owned by the plaintiff which are transferable by her during her lifetime or devisable by will in accordance with the statutes and laws of Oklahoma and are such interests which would continue to exist and survive the death of the plaintiff and pass, in absence of a will, to her heirs at law.

" * * * That the defendant in the exercise of said control is a constructive trustee for the benefit of the plaintiff and has the legal duty to be fair and equitable in the renting or leasing of said property and to account to the plaintiff for one-half (½) of the net rentals and income therefrom, and in the event of a sale to pay over to the plaintiff, her heirs, devisees, executors, administrators or assigns, one-third (⅓) of the net proceeds of any such sale.

"4. That since the entry of said divorce decree, the defendant has abused his discretion in exercising his custody, control and management of the above-described property; has failed to properly account to the plaintiff for the rents and income therefrom; has made improper charges against the income interest of the plaintiff in said property; and has devised a design or plan whereby the above-described property is leased in a package lease along with other properties owned by the defendant (in which other properties the plaintiff has no interest) and made unjustifiable allocations of rent to the various properties leased in such package lease to the end that this plaintiff has been deprived thereby of her fair and proper share of the rent and income from the property above described.

"5. That on or about June 13, 1966, the defendant by and through his counsel notified plaintiff that she had no vested rights in the above-described property but was only entitled for her life to one-half (½) of the net income therefrom which would terminate automatically at her death and only in the event the plaintiff were alive at the time of any sale of said property would she be entitled to one-third (⅓) of the net proceeds of any such sale. Defendant claims that the interests of the plaintiff in the above-described property are mere personal rights which endure for her lifetime but which are not transferable either voluntarily or by operation of law."

In the prayer of her petition, plaintiff prayed for judgment decreeing her to be the owner, as a tenant in common, with defendant (under the previous divorce decree and contract), of a vested one-third interest in the fee of the property, subject only to defendant's right to hold its legal title and lease it or rent it on reasonable terms, and sell it for an adequate consideration, one-third of the net thereof to belong to her or her heirs, devisees, administrators, executors or assigns.

Plaintiff further prayed the court to determine the reasonable rental value of the property, whether leased by itself or with other properties, and that defendant be ordered to account to her for her share of such rental as was properly attributable or allocable to her said interest therein; and that she recover from him such sums as were determined to be due her.

After a trial of the case without a jury, both parties requested the court to make written findings of fact and conclusions of law, and both parties submitted requested findings and conclusions. Thereafter, the court filed its written findings and conclusions and incorporated them, by reference, in the judgment he rendered for plaintiff.

As to the matter upon which I take issue with the Majority Opinion, the trial court concluded as follows:

"1. That there exists between the parties to this action an actual and justiciable controversy as to the interpretation of the Divorce Decree and Contract of October 31, 1952, and the provisions of the Declaratory Judgment Act of the State of Oklahoma are applicable to this action and the legal rights of the parties can be construed and determined by this Court pursuant to the provisions of 12 O.S.1961, § 1651, et seq.

\* \* \* \* \* \*

"4. That a declaratory judgment is proper in this case to determine the effect and meaning of the Divorce Decree and Contract of October 31, 1952, entered in . . . Case No. 74783 . . . (citing decisions in four other States). That there is a well recognized distinction between 'construction' of a judgment and the 'modification' of a judgment, and this Court under the Oklahoma Declaratory Judgment Act has the authority to construe the meaning and effect of the provisions of the former contract and decree herein without such action constituting a collateral attack upon the prior judgment or an attempt to modify or change the same in derogation of the provisions of Title 12, O.S. § 1031, et seq. relating to vacation and modification of prior judgments.

\* \* \* \* \* \*"

On the basis of such conclusions and its findings of fact, the court, in its judgment, determined, inter alia, that:

Defendant, as holder of the property's legal title, has the sole right to lease, rent, or sell it for an adequate considera-

tion, but that plaintiff owns interests in said property entitled her to ½ of its net income and ⅓ of the net proceeds of its sale in the event of such sale; that plaintiff's said interests are "vested equitable estates" that she may convey during her life and devise to others by will, or they may pass upon her death to her heirs at law, if she dies intestate.

As I read the Majority Opinion, its conclusion that the trial court's above described judgment is not authorized under Oklahoma's Declaratory Judgment Act is based upon a misinterpretation of said judgment and upon decisions promulgated in Arizona and Utah, which have different laws. The Majority Opinion ignores the wording of our Act's first section (§ 1651), which I think plainly authorizes a declaratory judgment in an action like the present one. Title 12 O.S.1971 and 1961, § 1651, provides:

"District and Superior Courts may, in cases of actual controversy, determine rights, status, or other legal relations, including *but not limited to* a determination of the construction or validity of any deed, contract, trust, or other instrument or agreement or of any statute, municipal ordinance or other governmental regulation, whether or not other relief is or could be claimed, except that no such declaration shall be made concerning liability or nonliability for damages on account of alleged tortious injuries to persons or to property either before or after judgment or for compensation alleged to be due under workmen's compensation laws for injuries to persons or concerning obligations alleged to arise under policies of insurance covering liability or indemnity against liability for such injuries. The determination may be made either before or after there has been a breach of any legal duty or obligation, and it may be either affirmative or negative in form and effect; provided however, that a court may refuse to make such determination where the judgment, if rendered, would not

terminate the controversy, or some part thereof, giving rise to the proceeding." (Emphasis added.)

The Utah statute (§ 78–33–2, U.C.A.1953), construed in Crofts v. Crofts, 21 Utah 2d 332, 445 P.2d 701, cited in the Majority Opinion, reads:

"Any person interested under a deed, will or written contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

The Arizona statutes (§ 27–702, A.C.A. 1939), construed in Glassford v. Glassford, 26 Ariz. 220, 262 P.2d 382, cited in the Majority Opinion, reads:

"Any person interested under a deed, will, written contract or other writing, or whose rights, status or legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder. A contract may be construed either before or after there has been a breach thereof."

By comparing the wording of the above quoted sections of the three different States' Declaratory Judgment Acts, it will be noted that the authorization given our District Courts to make determinations under the Oklahoma Act is "not limited" to those determinations specifically mentioned in Section 1651, supra. The only portion of the Oklahoma Act that restricts its operation is its last section (§ 1657), which reads as follows:

"This act shall not be applicable to orders, judgments or decrees made by the State Industrial Court, the Corporation Commission, or any other administrative agency, board or commission of the State of Oklahoma."

Plaintiff's position, as reflected in the Majority Opinion, is that the last quoted section's mention of the orders, judgments or decrees, to which the Act *shall not* apply, is further evidence of legislative intent that it *shall* apply to the construction of orders, judgments or decrees of the other adjudicative bodies ("District and Superior Courts") named in Section 1651, supra, applying the maxim "expressio unius est exclusio alterius." Concerning the rule of statutory construction exemplified by this maxim, this Court, in Cummings v. Board of Education, 190 Okl. 533, 536, 125 P.2d 989, 993, said:

"The enumeration of specific exceptions by the legislature excludes all others by implication, and *usually precludes the court from creating additional exceptions by judicial construction*." (Emphasis added.)

As I interpret it, this rule thus forbids exactly what the Majority Opinion has done, i. e., adding, by judicial construction, exceptions to the Declaratory Judgment Act, not contemplated therein. And the only reason the Majority Opinion gives for not interpreting the Act, as it is written, is that this "would unnecessarily prolong litigation and provide a new and novel method of modification or appeal." I submit that the trial court's judgment does not modify the previous divorce decree, nor does it attempt to change, reverse, vacate, or set aside any ruling or determination, expressed or implied, in said divorce decree.

I recognize that the "exclusio" rule should never be applied to defeat apparent legislative intent (In Re Arbuckle Master Con., Dist., D.Ct., M. Co., No. 9660, Okl., 474 P.2d 385, 392), nor to leave a statute with a meaning contrary to reason or justice; but, as will hereinafter appear, the construction given the Declaratory Judgment Act by the trial court obtains exactly the opposite result, and carries out the legislative will, in accord with reason and justice.

In expressing disbelief that the legislature could have intended to make district

**156**

court judgments subject to the Act, while, at the same time, excluding from its operation the orders, judgments or decrees of the bodies mentioned in Section 1657, supra, the Majority Opinion fails to recognize that, had not these exclusions been written into the Declaratory Judgment Act, said Act would have been in conflict with other Oklahoma statutes and with our Constitution. For instance, by statute and by amendment of the Oklahoma Constitution, the State Industrial Court has been given jurisdiction, exclusive of that of district courts generally, over what Section 1651, supra—consistent with Section 1657, supra—refers to as "liability or nonliability . . . for compensation alleged to be due . . ." under our Workmen's Compensation Laws. See Roberts v. Merrill, Okl., 386 P.2d 780. Also, under our Constitution and statutes, the Corporation Commission, to the exclusion of district courts, is vested with jurisdiction over such matters as the supervision, regulation and control of transportation and transmission companies doing business in this State (Art. IX, Okla.Const.) and of controversies affecting the conservation of oil and gas (Title 52 O.S.1971 and 1961, § 81ff; State v. Public Service Co., 187 Okl. 182, 102 P.2d 139). And both this Court and the Federal Court have recognized that tribunal's original jurisdiction to clarify or construe its own orders under Section 112, Title 52, supra. See Application of Martin, Okl., 321 P.2d 659, 672, 673, citing Cabot Carbon Co. v. Phillips Petroleum Company, Okl., 287 P.2d 675, and Constantin v. Martin, 10 Cir., 216 F.2d 312, and notice that in Martin (p. 665) we, like the trial court in the present case, recognized the difference between the construction or clarification of a former order or decree, and changing or modifying it.

As to the administrative agencies, boards and commissions covered by this State's Administrative Procedures Act, Title 75 O.S.1971 and 1963 Supp., §§ 301–325, both inclusive, it must be remembered that said Act contains a specific provision (§ 306)

with reference to declaratory judgments in the district court.

From the foregoing, it will be seen that, in drafting the Declaratory Judgment Act, the legislature had the best of reasons—that of avoiding a collision with our Constitution and previous statutes—for distinguishing between orders, judgments or decrees of the district courts and those of the tribunals and bodies referred to in Section 1657, supra, and for excluding the latter from operation of the Act. It therefore follows that viewing the district court's authority under the Act restrictively, because of the Act's exclusion from its operation of the orders, judgments or decrees of those tribunals and bodies, is without any reasonable or logical basis. The Act should be interpreted as written, and, when this is done, the trial court's ruling that it has jurisdiction to render the declaratory judgment, it rendered, must be affirmed.

For the reasons herein set forth, I respectfully dissent.

I am authorized to state that Justice HODGES concurs in this dissenting opinion.