2000 OK 92

**Jerry PATTERSON, dba Patterson Pest and Weed Control, Plaintiff/Appellant,**

v.

**Lonnie and Bernice BEALL, Defendants/Appellees.**

No. 92,399.

Supreme Court of Oklahoma.

Nov. 14, 2000.

Justin LaMunyon, Faulkner Law Firm, Enid, OK, for Appellant.

Steven D. Singer, Enid, OK, for Appellees.

BOUDREAU, Justice:

¶ 1 We are presented with two issues on certiorari. First, are summary judgment motions under Rule 13 of the Rules for District Courts of Oklahoma, 12 O.S. (1991), ch. 2, app. (Rule 13), inconsistent with the purpose of the Small Claims Procedure Act, 12 O.S. § 1751 *et seq.*—namely, the efficient and prompt disposition of small claims?[1] We may review claims which relate to alleged deprivations of due process of law despite a failure to preserve error. *Bottles v. State ex rel. Oklahoma State Bd. of Medical Licensure and Supervision*, 1996 OK 59, ¶ 4, 917 P.2d 471, 472; *Pettit v. American Nat'l Bank*, 649 P.2d 525, 529 (Okla.1982). Second, does the appraiser's alleged conduct, if

---

1. Appellant first raised this issue in the trial court on May 19, 1998, in his brief in opposition to Defendants' renewed motion for summary judgment. He contended he was being deprived of procedural due process by being subject to Rule 13 without the availability of discovery. Accordingly, he argued, the trial court should not be allowed to determine questions of fact. In his Petition in Error, he alleged the trial court erred in finding the Appellees were entitled to summary judgment. The Court of Civil Appeals addressed his contention in the opinion under review, and held that summary judgment motions are not available in small claims actions. While Appellant did not expressly raise the issue in his Petition for Certiorari, he raised it in Proposition VI of his Supplemental Brief on certiorari. He asserted that the trial court erred in granting summary judgment to Appellees. He argued that the trial court deprived him of the opportunity to prove his case when the trial court used "the aberration of summary judgment in small claims cases" without the benefit of discovery.

We may review claims which relate to alleged derivations of due process of law despite a failure to preserve error. *Bottles v. State ex rel. Oklahoma State Bd. of Medical Licensure and Supervision*, 1996 OK 59 ¶4 917 P.2d 471, 472; *Pettit v. American Nat'l Bank*, 1982 OK 85, 649 P.2d 525, 529 (1982).

proven, constitute a deceptive trade practice or an unfair trade practice under the Oklahoma Consumer Protection Act, 15 O.S. (1991), § 751 *et seq.*?

¶2 We hold that summary judgment motions are inconsistent with the purpose of the Small Claims Procedure Act and that the real estate appraiser's alleged conduct, if proven, constitutes an unfair trade practice. We reverse and remand for further proceedings consistent with this opinion.

## I

### FACTS

¶3 Jerry Patterson, dba Patterson Pest and Weed Control (Mr. Patterson), performed a termite inspection for Lonnie and Bernice Beall (collectively, Mrs. Beall). Mr. Patterson billed Mrs. Beall $105.00. She refused to pay the bill because, according to her, she had not asked him to perform a termite inspection but rather had requested merely a free estimate. The dispute escalated. He filed a $105.00 lien against her property. She then asserted she had performed a real estate appraisal for him, demanded payment of $115.00 for the appraisal and attempted to file a $115.00 lien against his property. He denied having requested an appraisal and denied she had performed an appraisal for him. He complained about her to the Oklahoma Real Estate Commission. She complained about him to the Oklahoma Department of Agriculture. Both entities declined to pursue the complaints. He then sued her for $4,500.00 in the small claims division—for breach of contract ($105.00) and for alleged violations of the Oklahoma Consumer Protection Act. She filed counterclaims against him for $4,500.00—for breach of contract ($115.00), for alleged violations of the Oklahoma Consumer Protection Act, for specific performance and to quiet title.

¶4 Mrs. Beall eventually paid Mr. Patterson $105.00 and both parties released their respective liens. Mrs. Beall also eventually voluntarily dismissed her Oklahoma Consum-

er Protection Act counterclaim against Mr. Patterson.

¶5 The trial court permitted the parties to file summary judgment motions. In a written order the trial court addressed all remaining claims and counterclaims. With respect to Mrs. Beall's counterclaims, the trial court concluded that the remedies of specific performance and quiet title are outside the scope of the Small Claims Procedure Act. The trial court then granted summary judgment against Mrs. Beall on her counterclaim for breach of contract. Mrs. Beall did not appeal from these adverse rulings.

¶6 With respect to Mr. Patterson's claims, the trial court found the parties settled Mr. Patterson's breach of contract claim when Mrs. Beall paid Mr. Patterson $105.00. The trial court then granted summary judgment against Mr. Patterson on his claim that Mrs. Beall violated the Oklahoma Consumer Protection Act. The trial court found that Mrs. Beall's alleged conduct was not deceptive and did not constitute a trade practice under the Oklahoma Consumer Protection Act. Mr. Patterson appealed.[2]

## II

### STANDARD OF REVIEW

¶7 We review the trial court's legal rulings *de novo. Manley v. Brown,* 1999 OK 79, 989 P.2d 448. *De novo* review requires an independent, non-deferential re-examination of another tribunal's record and findings.

## III

### SUMMARY JUDGMENT MOTIONS UNDER RULE 13 ARE INCONSISTENT WITH THE PURPOSE OF THE SMALL CLAIMS PROCEDURE ACT—THE EFFICIENT AND PROMPT DISPOSITION OF SMALL CLAIMS.

#### A

##### The Small Claims Procedure Act

¶8 The Small Claims Procedure Act, 12 O.S. (1991), § 1751 *et seq.* (the Act), pro-

---

2. This is the second appeal arising from this action. Earlier in the proceedings the trial court dismissed the action for lack of subject matter jurisdiction. The Court of Civil Appeals, Division 1, reversed. *Patterson v. Beall,* 1997 OK CIV APP 64, 947 P.2d 617.

vides a special procedure for certain actions where the amount of money sought to be recovered does not exceed four thousand five hundred dollars ($4,500.00).[3] It provides an informal procedure "to facilitate the access of parties to simple, inexpensive and speedy justice." *Johnson v. Scott*, 1985 OK 50, 702 P.2d 56, 59. The unmistakable public policy goal of the Act is to provide small claims forums as "people's courts, uncomplicated by the formal demands of superior courts." *Thayer v. Phillips Petroleum Co.*, 1980 OK 95, 613 P.2d 1041, 1044.[4]

¶ 9 In the interest of promoting the prompt and efficient disposition of small claims actions, the Act allows no formal pleadings other than a small claims affidavit and in some circumstances an answer. 12 O.S. (1991), § 1758.[5] The Act requires that the trial be set not more than *sixty days* nor less than *ten days* from the commencement of the action. 12 O.S. (2000), § 1756.[6] If the defendant desires to assert a counterclaim or setoff by verified answer, the Act requires the defendant to file the answer with the court clerk not later than seventy-two hours prior to the trial so as not to delay the trial. 12 O.S. (1991), § 1758.

¶ 10 The Act prohibits all depositions, interrogatories and all other discovery procedures except after judgment in aid of execution. 12 O.S. (1991), § 1760.

▉ ¶ 11 The Act mentions one pretrial motion only. 12 O.S. (1991), § 1757. It allows the defendant to file a motion to transfer the small claims action to the regular civil docket. *Lee Wayne Co., Inc. v. Pruitt*, 1976 OK CIV APP 23, 550 P.2d 1374. The Act requires that the motion to transfer be filed and defendant be given notice of the motion at least forty-eight hours prior to the trial. 12 O.S. (1991), § 1757. The granting of the motion is discretionary with the trial court. *Id.*

¶ 12 The Act does not allow new parties to be joined and it prohibits other parties from intervening in the action. 12 O.S. (1991), § 1760.

▉ ¶ 13 The Act requires that if either party desires a jury the party must notify the court clerk in writing at least two working days before the trial so as not to delay the trial. 12 O.S. (1991), § 1761. Regardless of the whether the trial is jury or nonjury, the "rules of evidence are relaxed." *Prudential Mgmt. Co., Inc. v. Allen*, 1976 OK 122, 554 P.2d 1365, 1366; *Black v. Littleton*, 1975 OK CIV APP 1, 532 P.2d 486, 487. The hearing and disposition of a small claims action is "informal with the sole object of dispensing speedy justice between the parties." 12 O.S. (1991), § 1761.

### B

### *Motions for Summary Judgment under Rule 13*

¶ 14 Motions for summary judgment are governed by Rule 13 of the Rules for District Courts of Oklahoma, 12 O.S. (1991), ch. 2, app. The standard for a summary judgment specified in Rule 13 is that there is no sub-

---

3. Because the Small Claims Procedure Act specifies a particular procedure for small claims actions, the Oklahoma Pleading Code does not govern such actions. 12 O.S. (1991), § 2001.

 The small claims division has power to hear claims for $4,500.00 or less, exclusive of costs and attorney's fees, in the following actions: (1) actions for the recovery of money based on contract or tort, including subrogation claims, but excluding libel and slander; (2) actions for replevin of personal property; and (3) interpleader actions. 12 O.S. (1991), § 1751(A). Small claims actions may not be brought by a collection agency or an assignee of a claim, except that a health care provider may bring an assigned claim against an insurer or third-party administrator. 12 O.S. (1991), § 1751(B).

4. One of the reasons for the simplified procedure is to eliminate the necessity for a lawyer. *Thayer*

*v. Phillips Petroleum Co.*, 1980 OK 95, 613 P.2d 1041, 1042.

5. An answer is necessary only when a defendant wishes to state new matter that constitutes a counterclaim or setoff. 12 O.S. (1991), § 1758.

6. At the time of the dispute in this case, the small claims trial was required to be set within thirty days after commencement of the action. This time was enlarged to sixty days by amendment effective June 7, 2000. *See* 2000 Okla. Sess. Laws ch. 380 § 3 ("The date for the appearance of the defendant as provided in the order addressed on the affidavit shall not be more than sixty (60) days nor less than ten (10) days from the date of the order.").

stantial controversy as to any material fact as shown by the affidavits and discovery materials attached to the motion. *Hamilton v. Allen*, 1993 OK 46, 852 P.2d 697.[7]

¶ 15 Rule 13(a) allows a party to serve a motion for summary judgment anytime after the filing of the action, except that if the action has been set for trial the motion must be served at least twenty days before the trial date. The motion must be accompanied by a concise written statement of the material facts as to which the movant contends no genuine issue exists and must explain why the movant believes summary judgment should be granted. The statement must refer to evidentiary materials upon which the movant relies and copies of these materials must be attached to the statement. Rule 13(a). With the exception of affidavits, these materials almost always take the form of discovery responses such as excerpts of depositions, answers to interrogatories and to requests for admissions, and documents that have been produced in response to discovery requests. *Id.*

¶ 16 Rule 13(b) allows the opposing party an opportunity, within fifteen days after service of the motion, to serve upon the moving party and file with the court clerk a written statement in response to the motion. The response must include a concise written statement of the material facts as to which the opposing party contends there is a genuine issue and the reasons for denying the motion. *Id.* The written statement must set forth and number each specific material fact that is claimed to be in controversy and must include references to the specific pages and paragraphs or lines in the attached affidavits and discovery materials upon which the opposing party relies. *Id.*

¶ 17 Further, Rule 13(d) allows a party opposing a motion for summary judgment to seek a continuance by submitting an affidavit explaining why he or she cannot present facts essential to justify opposition to the

7. Rule 13 provides in pertinent part:

a. A party may move for judgment in his favor on the ground that the depositions, admissions in the pleadings, stipulations, answers to interrogatories and to requests for admissions, affidavits, and exhibits on file, filed with his motion or subsequently with leave of court show that there is no substantial controversy as to any material fact.

The motion shall be accompanied by a concise written statement of the material facts as to which the movant contends no genuine issue exists and the reasons why summary judgment should be granted.

Reference shall be made in the statement to the pages, paragraphs and/or lines of the depositions, admissions, answers to interrogatories and to requests for admissions, affidavits, exhibits and other materials whether filed by the moving party or by the adverse party, and a copy of the material relied on shall be attached to the statement.

The motion may be served at any time after the filing of the action, except that, if the action has been set for trial, the motion shall be served at least twenty days before the trial date. The motion shall be served on the adverse party or parties and filed with the court clerk.

b. If the adverse party or parties wish to oppose the granting of the motion, they shall serve on the moving party and file with the court clerk within fifteen days after service of the motion a concise written statement of the material facts as to which he or they contend a genuine issue exists and the reasons for denying the motion. The adverse party shall attach to the statement affidavits and other materials containing facts that would be admissible in evidence, but the adverse party cannot rely on the allegations or denials in his pleading. In the statement, the adverse party or parties shall set forth and number each specific material fact which is claimed to be in controversy and reference shall be made to the pages, paragraphs, and/or lines of the depositions, admissions, answers to interrogatories and to requests for admissions, affidavits, exhibits and other materials whether filed by the moving party or by the adverse party, and he shall attach to the statement the portions relied upon. All material facts set forth in the statement of the movant which are supported by admissible evidence shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the adverse party which is supported by admissible evidence. If the motion for judgment is granted, the party or parties opposing the motion cannot on appeal rely on any fact or material that is not referred to or included in the statement in order to show that a substantial controversy exists.
* * *

d. Should it appear from an affidavit of a party opposing the motion that he cannot for reasons stated present facts essential to justify his opposition, the court may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
* * *

Rule 13 of the Rules for District Courts of Oklahoma, 12 O.S. (1991), ch. 2, app.

motion. The trial court may order a continuance to permit the opposing party to obtain affidavits or to conduct additional discovery.

## C

### Analysis

¶ 18 "The primary goal of statutory construction is to determine legislative intent. That intent is to be ascertained from the statute in light of its general purpose and object. It is presumed that the Legislature has expressed its intent in a statute and that it intended what is so expressed." *TXO Production Corp. v. Oklahoma Corp. Comm'n*, 1992 OK 39, 829 P.2d 964, 968–69.

¶ 19 In our view motions for summary judgment under Rule 13 are inconsistent with the intent and purpose of the Small Claims Procedure Act—the efficient and prompt disposition of claims.

¶ 20 First, the application of Rule 13's timing requirements to small claims actions would encumber the very purpose of the act. The Act's timing requirements are designed with speed and efficiency in mind. The Act allows a small claims trial to be set as early as ten days after commencement of the action. Any trial setting between 10–20 days after commencement of the action would either preclude Rule 13 motions (since a Rule 13 motion must be filed at least 20 days prior to trial) or would require a continuance of the trial. Any trial setting within thirty days after commencement of the action would undoubtedly, in most instances, also require a continuance.

¶ 21 Second, the purpose of the Act is to create a simple, uncomplicated "people's court" in which the procedures are informal and the litigants do not need to hire lawyers. In contrast, the procedures of Rule 13 are more technical and complex. Few non-lawyer litigants embroiled in a dispute within the jurisdictional limitations of the small claims division are likely to be aware of Rule 13. It is even less likely that they would understand its timing requirements, its sufficiency requirements with respect to motions and responses, or the effect of not filing a response at all. A non-lawyer litigant faced with a motion for summary judgment is far more likely to need the services of an attorney.

¶ 22 Third, the Small Claims Procedure Act expressly prohibits discovery. In contrast, summary judgment motions almost always require the use of discovery materials.[8]

¶ 23 Fourth, the Act relaxes the rules of evidence. In contrast, Rule 13 does not allow the rules of evidence to be relaxed. In order for material facts that are not controverted by the adverse party to be deemed admitted for the purpose of summary judgment, those material facts must be supported by admissible evidence. Rule 13(b).

¶ 24 Fifth, the maxim "expressio unius est exclusio alterius," that the mention of one thing in a statute impliedly excludes another thing, is used to determine legislative intent. *PSO v. State ex rel. Corporation Commission*, 1992 OK 153, 842 P.2d 750, 753. The Legislature expressly allowed one pretrial motion in the Small Claims Procedure Act—a motion to transfer the small claims action to another docket of the district court. The Legislature declined to allow for the filing of any other pretrial motions. From the Legislature's provision for one and only one pretrial motion we conclude the Legislature did not intend to allow motions for summary judgment in small claims actions.

¶ 25 Sixth, either party who desires access to the full panoply of pretrial motions has a method to avoid the limited procedures in the small claims division. A plaintiff may simply choose not to sue under the Act in the first instance. A defendant sued under the Act may move, pursuant to 12 O.S. (1991), § 1757, to transfer the action to the regular civil docket.

¶ 26 In conclusion, we hold that motions for summary judgment under Rule 13 are inconsistent with the purpose of the Small Claims Procedure Act—the efficient and

---

8. We recognize that occasionally a summary judgment motion and response may rely only on competing affidavits.

prompt disposition of claims—and are not applicable in small claims actions.

## IV

### THE OKLAHOMA CONSUMER PROTECTION ACT

#### A

##### Introduction

¶ 27 In the 1960's, individual states began to enact consumer protection laws designed to parallel and supplement Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), which Congress adopted to protect citizens against unfair trade practices. *See* Leaffer and Lipson, *Consumer Actions Against Unfair or Deceptive Acts or Practices: The Private Uses of Federal Trade Commission Jurisprudence*, 48 Geo. Wash. L.Rev. 521 (1980). These state laws, generally referred to as consumer protection acts or as unfair and deceptive trade practices acts, derived from various forms suggested to the states by the Federal Trade Commission (FTC) and the Commissioners on Uniform State Laws.[9]

 ¶ 28 Oklahoma's Consumer Protection Act (OCPA) is codified at 15 O.S. (1991), § 751 *et seq.* Because the OCPA is remedial in nature it is to be liberally construed to effectuate its underlying purpose. *See, e.g., Holmes v. LG Marion Corp.*, 258 Va. 473, 521 S.E.2d 528 (1999).

¶ 29 Mr. Patterson contends the following conduct by Mrs. Beall violated the OCPA: (a) demanding payment for a real estate appraisal that he never requested and that she never performed and (b) filing a false, retaliatory lien against his property.

#### B

##### Private Right of Action under the Oklahoma Consumer Protection Act

 ¶ 30 The Federal Trade Commission Act does not provide for a private right of action. Nevertheless, most of the state consumer protection acts, including Oklahoma's, do. *See* National Consumer Law Center, Unfair and Deceptive Acts and Practices, app. A (4th ed.1997) (includes citations to and summaries of the states' consumer protection acts). The private right of action in the OCPA is found at 15 O.S. (1991), § 761.1.[10] Based on the statutory language, the four elements of a consumer's private action under the OCPA are: (1) that the defendant engaged in an unlawful practice as defined at 15 O.S. (1991), § 753; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury.

¶ 31 The first element to be proved is that the defendant engaged in an unlawful practice under the OCPA. Unlawful practices are identified in § 753. Subsections (1)-(15) of § 753 declare a number of specific acts to be unlawful practices. Subsections (16)-(19) and (21)-(23) of § 753 refer to other Oklahoma statutes and declare violations of these statutes to be unlawful practices. Finally, pertinent to the instant case, subsection (20) is a catchall provision that declares unlawful the commission of any "unfair or deceptive trade practice as defined in section 752." The second element derives from the introductory phrase of § 753. It requires that the challenged practice must occur "in the course of the person's business." The third element, that the plaintiff as a consumer suffered an injury in fact, derives from § 761.1(A). This subsection gives a private right of action only to "an aggrieved consumer." It requires that an aggrieved consumer sustain damages as a result of the defendant's unlawful practice. The fourth element, causation, also derives from § 761.1(A). This subsection requires plain-

---

9. In 1970 the FTC offered alternative drafts of an Unfair Trade Practices and Consumer Protection Law. *See* Council of State Governments, Suggested State Legislation C4–C5 (1970). Two of the uniform model acts that have been adopted in a variety of forms are The Uniform Deceptive Trade Practices Act, 7A U.L.A. 35 (1978), and the Uniform Consumer Sales Practices Act, 7A U.L.A. 1 (1978).

10. The Oklahoma Legislature enacted the OCPA in 1972 and amended it in 1988 to expressly provide a private right of action to aggrieved consumers. 1988 Okla.Sess.Laws, ch. 161, § 2.

tiff to prove that his or her damages were caused by the defendant's unlawful practice.

 ¶ 32 A minority of states have adopted a fifth element—that the alleged unlawful practice affects the public interest. *See, e .g., Hall v. Walter,* 969 P.2d 224, 235 (Colo.1998); *Nelson v. Lusterstone Surfacing Co.,* 258 Neb. 678, 605 N.W.2d 136, 141 (Neb. 2000); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 719 P.2d 531, 535 (1986). These states inferred the public interest element from certain language used in their respective consumer protection acts that is not used in the OCPA. Thus, we decline to require as an element of a private OCPA claim that the challenged conduct affect the public interest.[11]

## C

### *Does Mrs. Beall's Conduct, if Proven, Constitute an Unfair Trade Practice?*

 ¶ 33 The trial court determined Mr. Patterson failed to establish the first element of his private right of action under the OCPA—an unlawful practice. The trial court concluded that Mrs. Beall's conduct, even if proven, did not violate the OCPA because the conduct did not constitute an unfair trade practice under the OCPA. We disagree.[12]

¶ 34 The OCPA defines an unfair trade practice as follows:

11. In contrast, the Attorney General is not allowed to proceed under the OCPA unless he or she believes that an investigation of a challenged practice would be in the public interest. 15 O.S. (1991), § 757.

12. The trial court also found that Mrs. Beall's conduct did not constitute a deceptive trade practice. We agree with this part of the trial court's ruling. Section 752 defines a deceptive trade practice as follows: " 'Deceptive trade practice' means a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral." 15 O.S. (1991), § 752 (11). The statutory definition does not speak to the necessity of an intent to deceive, but it does require that the

(12) "Unfair trade practice" means any practice which offends established public policy or if the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

15 O.S. (1991), § 752 (12). While this statutory definition of "unlawful trade practice" is broad it is not unique. Many state consumer protection statutes do not specifically define what constitutes an unfair trade practice but instead provide broad protection and leave it to the courts to determine whether specific conduct qualifies. *See generally,* Donald M. Zupanec, Annotation, *Practices Forbidden by State Deceptive Trade Practices and Consumer Protection Acts,* 89 A.L.R.3d 449 (1979 & Supp.2000).

 ¶ 35 Whether alleged conduct constitutes an unfair trade practice under the OCPA is a fact question that the trial court must determine on a case by case basis. Under the unique circumstances of this case, we have no difficulty concluding that if Mrs. Beall demanded payment from Mr. Patterson for a real estate appraisal that was neither requested nor performed, and filed or attempted to file a false lien against Mr. Patterson's property, her conduct constituted an unfair trade practice as that phrase is defined in the OCPA.

 ¶ 36 Accordingly, we vacate the Court of Civil Appeals opinion, reverse the trial court's summary judgment against Mr. Patterson on his OCPA claim, and remand the case for further proceedings consistent with this opinion.[13]

alleged deceptive actions have the capacity to deceive the consumer. Under the unique circumstances of this case, since Mr. Patterson clearly knew he had not requested a real estate appraisal from Mrs. Beall, the trial court correctly determined Mrs. Beall's actions did not have the capacity to deceive Mr. Patterson.

13. The analysis under this section addresses only the first element of Mr. Patterson's claim. On remand, the trial court will determine whether Mr. Patterson can establish the second, third and fourth elements of his private cause of action under the OCPA. Further, there are two first impression issues raised by the parties which the trial court did not address. Since we will not act on any untried issue as a tribunal of first instance, *Toxic Waste Impact Group, Inc. v. Leavitt,* 1994 OK 148, 890 P.2d 906, 913, we defer to the

## V

### VACATION OF THE AWARD OF APPELLATE ATTORNEY'S FEES AND COSTS TO MRS. BEALL

¶ 37 The Court of Civil Appeals awarded Mrs. Beall her appeal-related attorney's fees and costs. Since we vacate the Court of Civil Appeals' decision and reverse the trial court's judgment, we also vacate the award of appeal-related attorney's fees and costs. *Thompson v. Independent School Dist. No. 94*, 1994 OK 139, 886 P.2d 996.

## VI

### SUMMARY

¶ 38 We hold that motions for summary judgment are inconsistent with the intent and purpose of the Oklahoma Small Claims Procedure Act and, therefore, summary judgment motions cannot be filed or considered in the small claims division of the district court. We further hold that if Mr. Patterson's OCPA claim is not otherwise precluded and if he proves Mrs. Beall's conduct as alleged, then Mrs. Beall's conduct constituted an unfair trade practice under the OCPA.

THE OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; THE AWARD OF APPEAL RELATED ATTORNEY'S FEES AND COSTS IS VACATED; THE TRIAL COURT'S JUDGMENT IS REVERSED AND THE CAUSE IS REMANDED FOR FURTHER PROCEED-

INGS CONSISTENT WITH THIS OPINION.

¶ 39 HODGES, LAVENDER, KAUGER, WATT, WINCHESTER, JJ., concur; SUMMERS, C.J., HARGRAVE, V.C.J., concur in part and dissent in part; OPALA, J., dissents from the Court's opinion.

OPALA, J., dissenting from the court's opinion.

¶ 1 The court *vacates* today the Court of Civil Appeals' opinion, *reverses summary judgment* entered in a small claim as impermissible in the context of the Small Claims Procedure Act [1] and *remands* the cause to determine whether the defendants' conduct constitutes an unfair trade practice under the Oklahoma Consumer Protection Act [OCPA].[2]

¶ 2 While I do not recede from the court's disposition, I cannot join its **hyperglobal pronouncement** that ignores the *much narrower* issues presented by the record. The question the court **invoked *sua sponte* for today's reversal and now answers**—whether summary process can be fitted into the legislatively crafted scheme of procedure for small-claims litigation—is a pure exercise in supererogation[3] that produces no more than *obiter dictum*.[4] Without pausing to consider if summary process may arbitrarily be barred from a whole class of litigants, today's pronouncement lures lawyers into a false sense of security. This is so because the court stopped short of testing its superfi-

---

trial court to determine the following issues on remand: (a) whether Mrs. Beall's alleged conduct is exempt from the OCPA under 15 O.S. (1991), § 754(2), which provides that the OCPA shall not apply to "actions or transactions regulated under laws administered by ... any ... regulatory body or officer acting under authority of this State;" and (b) whether Mr. Patterson's claim is barred by the statute of frauds.

1. 12 O.S.1991 § 1751 et seq.

2. 15 O.S.1991 § 751 et seq.

3. The term "supererogation" means "the act or process or an instance of performing more than is required by duty or obligation ... [or] more than is necessary to complete an undertaking."

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 2293 (1961).

4. The term *"obiter dictum"* means "[a] judicial comment made during the course of delivering a [court] opinion, *but one that is unnecessary to the decision in the case* and therefore not precedential (though it may be considered persuasive)." BLACK'S LAW DICTIONARY 1100 (7th ed.1999) (emphasis added). "Because the precedent-issuing court has stepped beyond the bounds of its authority when it speaks law not essential to resolving the parties' dispute, its successor courts are free to dismiss such talk as nonbinding." Richard B. Cappalli, THE AMERICAN COMMON LAW METHOD § 2.18 at page 19 (1997). "Dissenting judgments are sometimes considered in order to clarify the statements of the majority." Rupert Cross, PRECEDENT IN ENGLISH LAW 90 (1961).

cial analysis by the mandated norms of uniformity and symmetry as well as by the notion of fundamental law's fairness that underlies Art. 5, § 46, Okl. Const.,[5] to be examined together with state and federal due process standards and the Equal Protection Clause of the XIVth Amendment. Today's blanket summary-process ban from small claims is **myopically literal, simplistically rigid and utterly insensitive to the state and federal constitutional commands.** I would, **on this record,** *leave undisturbed* the trial court's utilization of party-initiated summary process whose use was not timely and frontally challenged as unauthorized for small claims. Instead I would *reverse* summary judgment as flawed and *remand* the cause for first-instance determination whether (a) the appraiser's conduct lies *dehors* the OCPA's purview as an agency-regulated activity and (b) the exterminator's allegations (of deceptive and unfair trade practices) are sufficient to support a breach of the OCPA.

## I

### THE ANATOMY OF LITIGATION

¶ 3 Jerry Patterson d/b/a Patterson Weed and Pest Control [Patterson or *exter-*minator ] brought a claim against Lonnie and Bernice Beall [collectively called Beall or *appraiser* ] for *breach of contract* and for violation *of the OCPA.*[6] Beall pressed a counterclaim against the exterminator for (a) breach of contract, (b) "violation" of the OCPA, (c) quiet title and (d) specific performance. *Both parties sought summary relief.*[7] Responding to these quests, the trial court disposed of the parties' claims by what it called "dismissal" and directed each of them to pay its own counsel fee.[8] The law clearly requires that we treat the nisi prius *dismissal* as summary judgment.[9] The Court of Civil Appeals affirmed. *Only the exterminator appealed.* The latter seeks relief by certiorari.

## II

### TODAY'S PRONOUNCEMENT IS HYPERGLOBAL AND TOTALLY DETACHED FROM THE CONSTRAINTS OF THE RECORD

¶ 4 The court's *absolute ban* of summary process from small-claims litigation is *overbroad. It extends beyond the issues presented by the record.*[10] This case simply *does not tender* the issue whether summary-judgment

---

5. For the terms of Art. 5, § 46, Okl. Const. see *infra* note 35.

6. *Supra* note 2.

7. *There was no attempt below at discovery by either litigant.* All the evidentiary materials attached to their separate motions and responses were secured otherwise than through discovery.

8. The nisi prius court ruled as a matter of law that the OCPA could not be invoked in the parties' claims because (a) the appraiser's actions were neither *deceptive* nor an *unfair trade practice* within the meaning of the OCPA and (b) the appraiser had no counterclaim for breach of the OCPA as a result of her "earlier dismissal" of that demand. The trial court also determined that the appraiser's quest for specific performance and quiet title was beyond the parameters of a small claim. According to the trial court, there were no longer any issues to be tried because (a) the appraiser had paid the exterminator's termite inspection bill, (b) both liens (the exterminator's and appraiser's) had been released and (c) neither party had shown any other money damages.

9. Where a *motion to dismiss* tenders for consideration materials *dehors* the pleadings, summary judgment procedure must be used and the resultant ruling be considered dispositive of summary relief quest. 12 O.S.1991 § 2012(B). *See in this connection Ouellette v. State Farm Mut. Auto. Ins. Co.,* 1994 OK 79, ¶ 6, 918 P.2d 1363, 1365 n. 10; *Dyke v. Saint Francis Hospital, Inc.,* 1993 OK 114, ¶ 7, 861 P.2d 295, 299; *Norman v. Trison Development Corp.,* 1992 OK 67, ¶ 4, 832 P.2d 6, 8; *Silver v. Slusher,* 1988 OK 53, ¶ 6, 770 P.2d 878, 881 n. 8.

10. *See in this connection* Richard B. Cappalli, *supra* note 4 at p. 37, § 3.13(b) (Broad Formulations):

> Frequently the precedential court will fly far beyond the case facts before it and its reasoning on those facts by stating a holding of great generality.[104] ... A "holding" of great generality will necessarily emanate from a specific factual context —— a particular judicial actor at a specific jurisdictional level performing a certain act, etc.-and *this narrow factual context confines the breadth of the precedent,* regardless of the writer's bold attempt, in the methods of the common law.
> (emphasis supplied).

In footnote 104, § 3.13(b), at p. 37, *supra* note 4, Prof. Cappalli observes that overly broad formulations violate the "Wambaugh dictum that

practice may be utilized in small claims. The record offers a far less broad snippet of the procedure to be tested here. It poses the narrow question whether *in this small claim it was reversible error to act upon* the appraiser's quest for summary judgment on the exterminator's claim. **That issue should be answered by holding no more than that summary relief was inappropriate because it is unsuited for resolution of disputed fact issues.**

¶ 5 The appraiser sought summary relief from the exterminator's small claim and later pressed her own counterclaim. The exterminator (a) *challenged* the appropriateness of summary disposition based on his belief that the record presented disputed fact questions and (b) himself *sought* summary relief from the appraiser's counterclaim. *Neither party argued below that summary relief consti- tutes process inappropriate for use in small claims.* Instead, both "expressly agreed that any litigant ... shall be free to file dispositive pre-trial motions...."[11] The appraiser's response to the petition in error notes that *by agreement* the parties submit- ted the case to the trial judge for resolution by summary relief. The only negative ex- pression about *summary process* is that

found in the exterminator's supplemental brief on *certiorari.* There, *without* any fur- ther explanation, he refers to the "aberration of summary judgment in small-claims cases."[12] Even if these remarks may be accepted as argument against the use of summary process in small claims, *they came much too late at certiorari stage. In time- honored appellate practice they are to be dismissed as mere afterthought.*[13]

¶ 6 From a footnote comment in the ex- terminator's 19 May 1998 motion for sum- mary judgment on the appraiser's counter- claim (*cum* response in opposition to the appraiser's renewed motion for summary judgment on exterminator's claim), the court takes a giant leap to conclude that the exter- minator *broadly challenged* below, on due process grounds, the use of summary process in a small claim.[14] The exterminator's cryp- tic comments are no more than a realistic observation about the limits of summary pro- cess when utilized in small-claims litigation. **They fall short of a frontal challenge to the use of summary process in a small claim.**

¶ 7 *Today's broad pronouncement un- qualifiedly condemning summary process'*

courts articulate the narrowest rule that justifies the decision," citing Charles W. Collier, *Prece- dent and Legal Authority: A Critical History,* 1988 Wis. L.Rev. 771, 775–76 (1988)(where Collier discusses Eugene Wambaugh, THE STUDY OF CASES: A COURSE OF INSTRUCTION (1894)). Cappalli points out that "Justice Powell has criticized Justices for writing more broadly than necessary to de- cide the particular facts and issues, thereby 'creat[ing] incentives for future attacks on the Court's opinions,'" *Id.* at 37, quoting Lewis F. Powell, Jr., *State Decisis and Judicial Restraint,* 47 Wash & Lee L.Rev. 281, 288 (1990).

11. The "RECITATION OF AGREEMENT and ORDER" (entered 28 April 1998) states in part: "NOW ON this 16th day of April, 1998 comes on for scheduling review the above captioned matter. The parties each appear by way of their undersigned attorneys and announce to the Court that notwithstanding any statutory o[r] decisional law to the contrary, it is *express- ly agreed that any litigant herein shall be free to file dispositive pre-trial motions* in this matter ... IT IS THEREFORE ORDERED, AD- JUDGED and DECREED that the parties here- in shall be allowed to file *any and all pre-trial motions ....*" (emphasis added).

12. Exterminator's supplemental certiorari brief at pages 15 and 19.

13. *Non-jurisdictional issues, raised for the first time on rehearing or on certiorari, are generally unfit for review.* See in this connection *Halliburton Oil Producing Co. v. Grothaus,* 1998 OK 110, ¶ 23, 981 P.2d 1244, 1253; *City of Oklahoma City v. State ex rel. Oklahoma Dept. of Labor,* 1995 OK 107, ¶ 4, 918 P.2d 26, 32 (supplemental opinion on rehearing); *First Federal Sav. and Loan Ass'n v. Nath,* 1992 OK 129, ¶ 10, 839 P.2d 1336, 1342.

14. The exterminator states at page 8 of his brief: "Plaintiff has never received an appraisal from Defendants.1" In footnote 1 he states: "Without the benefit of discovery, Plaintiff is unable to compel production of documents from Defen- dants, nor submit Defendants to a deposition or interrogatories. Pursuant to Rule 13 of the Rules for District Courts, parties can rely on depositions, admissions in the pleadings. stipula- tions, answers to discovery, affidavits and exhib- its to either request or oppose summary judg- ment. Because we are within the small-claims procedure, only affidavits and exhibits are avail- able. It seems then, that procedural due process would at least limit the consideration of these matters to purely questions of law and not ques- tions of fact or mixed questions of law or fact."

*use in small claims is clearly unwarranted by the record.*

## III

## THE USE OF SUMMARY PROCESS RECEIVING TODAY'S SUA SPONTE BLANKET CONDEMNATION IS BANNED UPON A REVERSAL THEORY THAT WAS NOT URGED IN THE TRIAL COURT

¶ 8 An appellate court's jurisprudential gloss *upon an issue not tendered* by the aggrieved party for the judgment's reversal represents no more than gratuitous commentary and an exercise in futility.[15] Because the exterminator did not press for the blanket ban of summary process at nisi prius, neither the intermediate appellate nor this court may (on certiorari) reach that issue on review. **No reviewing court is free to give corrective relief on a theory not tendered by the aggrieved party for the judgment's reversal.**[16] Moreover, courts are not allowed to *forecast* what they might do about an issue that is not before them.[17] Were the court affirming in this case a nisi prius refusal to consider summary process in the context of a small claim, its ruling could be rested on *any* applicable theory consistent with the record presented for review. **A reversal, on the other hand, may neither be grounded on some theory invoked *sua sponte* nor on any pressed argument which lacks record support.**[18]

¶ 9 Simple prudence dictates that we eschew from reaching today—either directly or by dicta—the purely *abstract question of whether summary process is to be entirely banished from small-claims litigation.*

## IV

## NO TENABLE LEGAL BASIS EXISTS FOR BARRING LITIGANTS' ACCESS TO SUMMARY PROCESS

¶ 10 Today's rigid approach to the small-claims regime is ill-advised and short-sighted. The question is *not* how neatly summary process can be fitted into the statutory scheme of procedure for small-claims litigation, but whether there is a *constitutional* or *statutory command* for excluding summary process from small claims. This record is barren of any tenable legal ground for *globally* depriving litigants of access to the valuable mechanism that summary relief affords. Summary process (a) *is not condemned by the legislature,* (b) if properly applied, *bears no characteristics injurious to fair and orderly procedure,* and (c) *poses no incongruity with the minimum standards of due process.*

### A.

### *The Small Claims Procedure Act Affords No Basis For An Across-the-board Condemnation of Summary Process*

¶ 11 The only expression in the Act to which one may point as *perhaps inhospitable*

---

15. In discussing the impact of dicta, Professor Cappalli, *supra* note 4 at p. 39 § 3.14(b), states: Another powerful tool in the grasp of the precedential court is to state the "law on issues and facts not before it. Here is the dramatic distinction between legislatures and courts. All "law" is potentially before the former; this is the lawmaking body supreme. It simply writes the laws it wants. The latter, the courts, have no such liberty. Their power is confined by the needs of the controversy before them. They can only issue the law necessary to decide that dispute. *Any pronouncements beyond that need carry no badge of authority.* (emphasis added).

16. *Bane v. Anderson, Bryant & Company,* 1989 OK 140, ¶ 33, 786 P.2d 1230, 1237; *Mills v. Mills,* 1973 OK 74, ¶ 32, 512 P.2d 143, 151.

17. *Hughey v. Grand River Dam Authority,* 1995 OK 56, ¶ 10, 897 P.2d 1138, 1143–1144 (1995); *Northeast Okl. Elec. Corp., Inc. v. Corporation*

*Com'n,* 1991 OK 28 ¶ 7, 808 P.2d 680, 683 n. 7; *Westinghouse Elec. Corp. v. Grand River Dam Auth.,* 1986 OK 20, ¶ 17, 720 P.2d 713, 718. "Every judgment must be read as applicable to the particular facts proved or assumed to be proved, since the *generality of the expressions* which may be found there *are not intended to be expositions of the whole law* but govern and are *qualified by the particular facts* of the case in which such expressions are to be found." (Emphasis added.) Lord Halsbury's famous passage in Quin v. Leathem [1901] A.C. 495 at p. 506, quoted in Cross, PRECEDENT IN ENGLISH LAW, *supra* note 4 at 37.

18. *Wright v. Grove Sun Newspaper Co., Inc.,* 1994 OK 37, ¶ 18, 873 P.2d 983, 992; *Willis v. Nowata Land and Cattle Co., Inc.,* 1989 OK 169, 789 P.2d 1282, 1286–1287.

to summary relief is that which *prohibits discovery*.[19] Purely dilatory motions *alone* stand barred by the regime prescribed for the small-claims practice. Summary process is not in that rubric. It serves the very opposite purpose — that of accelerating a claim's disposition by isolating, in advance of trial, issues that are not in controversy.[20] *A motion for summary relief is not dilatory* **when, as here, discovery is** *either* **unnecessary** *or can easily be limited to a manageably microscopic dimension accomplishable by self-help*.[21] Summary practice also affords an *effective and useful screen* against questionable or spurious claims and defenses.[22] Depriving judges who hear small claims of this procedural device foists upon them lengthy trials that could easily be avoided.

¶ 12 Today's rigidity in construing the Act not only places undue constraints on the use of summary process, it also fails to examine the philosophical underpinnings that make small claims a distinct class of litigation.

## B.

### Rule 13 Does Not Bar Small–Claims Litigants from Access to Summary Process

¶ 13 Summary process at nisi prius is governed *solely* by Rule 13.[23] That rule *does not exclude* small claims from the reach of summary-disposition practice. There is no rule-imposed impediment to deciding small claims by summary process, in whole or in part. Nor is there any obstacle to employing in small claims a "mini-form" of summary process that would authorize the judge to examine and decide "*any individually and clearly* defined fact issue that is claimed to be undisputed and shown to be supported *solely by inferences* consistent with the movant's position in the case." [24]

¶ 14 The statutory time limits for bringing a small claim and for pressing summary

**19.** The pertinent terms of 12 O.S.1991 § 1760 are:

*\* \* \* No depositions shall be taken or interrogatories or other discovery proceeding shall be used* under the small claims procedure except in aid of execution. No new parties shall be brought into the action, and no party shall be allowed to intervene in the action.
(emphasis added).

**20.** *Copeland v. Tela Corp.*, 1999 OK 81, ¶ 4, 996 P.2d 931, 932; *Wynn v. Avemco Ins. Co.*, 1998 OK 75, ¶ 24, 963 P.2d 572, 576; *Union Oil Co. of California v. Bd. of Equalization of Beckham County*, 1996 OK 40, ¶ 10, 913 P.2d 1330, 1333; *Reams v. Tulsa Cable Television, Inc.*, 1979 OK 171, ¶ 9, 604 P.2d 373, 376.

**21.** What may be regarded as dilatory in summary relief process is not the motion for summary disposition but the *need for discovery*. When that need is absent because the materials are readily available or the discovery to be sought can judicially be confined to a manageably microscopic dimension, the underlying policy of the law should not be viewed as incompatible with relief by summary process.

**22.** *See, e.g., McCreery v. Eli Lilly and Co.*, 87 Cal.App.3d 77, 87, 150 Cal.Rptr. 730, 736 (1978); *Baron v. Mare*, 47 Cal.App.3d 304, 307, 120 Cal. Rptr. 675 (1975).

**23.** Rule 13 (Summary Judgment), Rules for District Courts of Oklahoma, 12 O.S.Supp.1993, Ch.

2, App. 1. The 1984 Pleading Code (12 O.S.Supp. 1984 § 2001 et seq.) contains **no provision** for **regulation of summary dispositions either by judgment or by pre-trial elimination of uncontroverted issues.** The Code's omission is indicative of legislative intent to leave summary relief to regulation by the Supreme Court's rule-making. The Committee Comment to 12 O.S.Supp. 1984 § 2012 states in pertinent part that "...[t]he essential function of permitting the summary disposition of cases that do not involve any substantive dispute that justifies a full trial can be effectively handled under the summary judgment procedure of Oklahoma District Court Rule 13 ..."

**24.** *See Patel v. OMH Medical Center, Inc.*, 1999 OK 33, ¶ 18, 987 P.2d 1185, 1193 (emphasis in original), which holds that Rule 13 is *not applicable to postjudgment proceedings*. By its very terms Rule 13 applies to prejudgment issues *only*. *Id.* at ¶ 18, at 1193. Unlike today, the court in *Patel* found *no legal impediment* to the use of summary process in any postjudgment vacation proceedings. **Today's opinion should have, at a minimum, followed the wisdom of that precedent to encourage, for use in small claims, the** *Patel*-**approved mini-summary process,** crafted there for application *dehors* the Rule 13 procedure, "to eliminate from adversary contest *any individually and clearly* defined fact issue that is claimed to be undisputed and shown to be supported *solely by inferences* consistent with the movant's position in the case." *Id.* at ¶ 18, at 1193 (emphasis in original).

relief do not raise an insurmountable barrier to this conclusion. Judges who hear small claims are clearly in charge of their dockets and may, if necessary, enlarge the statutory time limits to accommodate a *nondilatory quest for summary relief*.[25] Recent legislative changes in the small-claims procedure, which have elongated the time for setting a claim to be heard from 30 to 60 days,[26] are compatible with the summary process' use designed to eliminate both the expense and delay of trial when no material facts are at issue.

¶ 15 No litigant should be denied access to summary relief unless the use of that process is banned by the constitution or by an enactment that will pass fundamental law's muster. Since no such barriers are present here, *today's hyperglobal pronouncement is utterly unwarranted.*

## V

### THE RULE OF EXPRESSIO UNIUS EST EXCLUSION ALTERIUS IS INAPPLICABLE IN DETERMINING THE APPROPRIATENESS OF SUMMARY PROCESS IN THE CONTEXT OF SMALL-CLAIMS PROCEDURE

¶ 16 The general rule that the express mention of one matter excludes other similar matters that are not mentioned[27] has no application here. The maxim is an *auxiliary rule of statutory construction, not an absolute norm of substantive law.* It should be

25. *Hambright v. City of Cleveland,* 1960 OK 184, 360 P.2d 493, 496.

26. The terms of 12 O.S.Supp.2000 § 1767 (effective 7 June 2000) are:
 The date for the appearance of the defendant as provided in the order endorsed on the affidavit shall not be more than sixty (60) days nor less than ten (10) days from the date of the order. . . .

27. This maxim, known as *expressio unius est exclusio alterius,* is an auxiliary rule of statutory construction to be applied with great caution and is not conclusive in the search for a statute's meaning. It is used only where in the natural association of ideas the contrast between a specific subject matter which is expressed and one which is not mentioned leads to an inference that the latter was not intended to be included within the statute. *Spiers v. Magnolia Petroleum Co.,* 1951 OK 276, ¶ 20, 244 P.2d 852, 856–857; *Har-*

applied *only* as an aid in discovering legislative intent. It is never to be followed to the extent of defeating it.

¶ 17 The Small Claims Procedure Act's reference, in 12 O.S.Supp.1994 § 1757,[28] to motions for transfer of the cause to the general docket *does not exclude* resort to procedural devices that are consistent with the object of the Act—*the efficient and prompt disposition of claims and defenses.*[29] The court may not infer from the mention of a motion to transfer that other motions stand excluded from small-claims procedure. A valid ground must *first* be raised for prohibiting a judge from entertaining the use of summary process in a small claim *before* that valuable procedural mechanism can be withheld from a litigant on that.docket. ·

## VI

### TODAY'S ABSOLUTE EXCLUSION OF SMALL–CLAIMS LITIGANTS FROM THE BENEFIT OF SUMMARY PROCESS OFFENDS THE EQUAL PROTECTION CLAUSE

¶ 18 *Absolutely* excising from the benefits of summary process *every* small-claims litigant, including even those who need not resort to discovery, is no less offensive to the Equal Protection Clause than subjecting prisoners to a different mode of trial (nonjury) for mental-health commitment from that which is accorded other persons.[30] In both

*desty v. Andro Corp.–Webster Division,* 1976 OK 129, ¶ 23, 555 P.2d 1030, 1036.

28. The pertinent terms of 12 O.S.Supp.1994 § 1757 are:
 A. On *motion* of the defendant, a small claims action may, in the discretion of the court, be transferred from the small claims docket to another docket of the court; . . .
 (emphasis supplied).

29. *Johnson v. Scott,* 1985 OK 50, ¶ 14, 702 P.2d 56, 58 ("the purpose of the Small Claims Procedure Act is the disposition of speedy justice").

30. The ban imposed today is as offensive to constitutional standards as that which the Court found in *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), where excluding *convicts only* from the benefit of jury trial was held to violate the XIVth Amendment. *See*

instances a *valuable and critical procedural device is denied without any rational relation to some characteristic that would make the distinction free from an impermissibly discriminatory impact.*[31]

¶ 19 A party litigant cannot be deprived of a valued procedural device, otherwise available in the district court to other litigants, unless the exclusion bears a *rational relationship* to the legitimate objective to be attained. The remedial objective of small-claims procedure is to prevent delay and foster expeditious decision-making.[32] **Only delay-causing discovery is banned.** When utilization of summary process would cause no delay, there is *no rational relationship* between exclusion of summary process and the legislative purpose of eliminating delay.[33]

¶ 20 Summary relief clearly is compatible with the speed factor that is legislatively infused. Its purpose is to eliminate the delay and the expense of a needless trial where there is no material fact issue to be examined.[34] Today's *myopically and absurdly rigid construction of the Act prohibits summary relief for all small-claims litigants where no discovery is required.* This approach plainly offends due process and equal protection standards.

¶ 21 No delay component was present in this case. Both parties pressed for summary judgment in an effort *to avoid a needless trial on the claim pressed by the other. Neither party sought discovery. Summary judgment was resisted by the exterminator on the contention that fact issues made its application impermissible.* The appraiser's counterclaim was summarily disposed of without the necessity of trial. On this record, today's hyperglobal jurisprudential treatment is plainly injurious to the bench and bar. It lures practitioners as well as judges into a false sense of security by not affording them an in-depth examination into the fundamental law's impact on the court's blanket condemnation of summary relief, total or partial.

## VII

### THE PROCEDURAL UNIFORMITY COMMANDED BY ART. 5, § 46, OKL.CONST.,[35] REQUIRES THAT SUMMARY PROCESS SANS DISCOVERY BE AVAILABLE TO SMALL–CLAIMS LITIGANTS

¶ 22 Today's pronouncement is *insensitive* to the constitutional norms of uniformity and symmetry. Art. 5, § 46, Okl. Const., mandates, **in absolute terms,** statewide procedural uniformity for an entire class of similarly situated persons or things.[36] Its relevant terms *expressly prohibit* the legislature

---

also *Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972).

**31.** The Equal Protection Clause, although not an absolute guarantee of equality of operation or application of state legislation, is intended to safeguard the quality of governmental treatment against arbitrary discrimination. Legislative classification which sets apart a class without any rational basis therefor offends that clause. In *Wilson v. Foster,* 1979 OK 45, 595 P.2d 1329, 1332, the court applied equal protection norms to command a jury trial for a litigant who was arbitrarily excluded. Its pronouncement was based on the teachings of *Baxstrom* and *Cady, supra* note 30.

**32.** The terms of 12 O.S.1991 § 1761 provide:
\* \* \* The hearing and disposition of such [small claim] actions shall be informal with the *sole object of dispensing speedy justice* between the parties.
(emphasis supplied).

**33.** *See in this connection Payne v. DeWitt,* 1999 OK 93, ¶ 14, 995 P.2d 1088, 1090.

**34.** *Copeland, supra* note 20 at ¶ 4, at 932; *Wynn, supra* note 20 at ¶ 24, at 576; *Union Oil, supra* note 20 at ¶ 10, at 1333; *Reams, supra* note 20 at ¶ 9, at 376.

**35.** The pertinent terms of Art. 5, § 46, Okl. Const., are:

The *Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing* \* \* \*
*Regulating the practice* or jurisdiction *of,* or changing the rules of evidence in *judicial proceedings or inquiry before the courts, justices of the peace, sheriffs, commissioners, arbitrators, or other tribunals,* \* \* \*
(emphasis added).

**36.** *See Johnson v. Tony's Town Mister Quik,* 1996 OK 138, ¶ 5, 915 P.2d 355, 357–58; *Reynolds v. Porter,* 1988 OK 88, ¶ 13–19, 760 P.2d 816, 822; *Maule v. Independent School Dist. No. 9,* 1985 OK 110, ¶ 12, 714 P.2d 198, 203–04.

from regulating court procedure by disuniform rules.[37] Although directed to the legislature, the terms of § 46 *are equally binding on the judiciary.*[38] This court's own jurisprudence, no less than the legislature's enactments, must faithfully conform to the fundamental law's prohibition against disuniform laws on prohibited subjects.[39] Judicial procedure is a subject *explicitly protected from legislative invasion by asymmetrical regulation* and hence also from the court-injected genre of disuniformity.

¶ 23 Today's across-the-board removal of small claims from the range of permissible summary-relief use *destroys* the symmetry of Oklahoma's summary-process regime and *offends* the uniformity-of-procedure mandate of § 46. The *court's overbroad pronouncement* denies *all* small-claims litigants that fundamental fairness in litigation process which is available to other suitors. Even if Rule 13 did *explicitly bar* summary judgments in *all* small claims—thus including those claims in which that relief could be pressed, in whole or in part, without resort to discovery—the breadth of its prohibitory scope would violate the norms of § 46. By today's pronouncement, which *sua sponte* singles out all small-claims litigants who need no discovery for less favorable treatment, the court destroys the very fabric of uniformity that the constitution commands.

## VIII

## SUMMARY

¶ 24 Today's overbroad pronouncement, in which the court, acting *sua sponte*, takes summary process out of the small-claims procedure *under all circumstances*, is *obiter dictum*— rank jurisprudential ballast of no efficacy. *No litigant below or on appeal pressed for that relief.* To the contrary,

summary process was invoked below **by the parties' agreement** to seek summary relief by their separate quests to escape liability on the claim pressed by the other. The court today goes far beyond what is necessary to decide the case before it.

¶ 25 There is *no basis for the myopically simplistic and excessively rigid notion* that in small claims relief by **summary process must be declared unauthorized.** This view finds *no* support in the constitution, the state statutes or in the court rules. The purpose of summary process, wherever invoked, is that of *accelerating* a claim's disposition by *isolating,* in advance of trial, issues not in controversy and by *screening out* questionable or spurious claims and defenses. Today's overbroad and absolute ban is inconsistent with the Act's declared legislative objective. It also contravenes due process and equal protection norms as well as the procedural symmetry mandated by Art. 5, § 46, Okl. Const.

¶ 26 On this record, I would *leave undisturbed* the **trial court's utilization of party-initiated summary process (which neither of them attacked below as unauthorized for small claims)**; I would *reverse* summary judgment *as impermissible for this case and direct that the cause stand remanded* for further proceedings to be conducted in the first-instance court.

---

**37.** *Maule, supra* note 36 at 203–204; *Reynolds, supra* note 36 at 822; *Great Plains Federal S & L Assn. v. Dabney,* 1993 OK 4, ¶ 12, 846 P.2d 1088, 1095–1096 (Opala, J., concurring). "Fundamental fairness cannot be afforded except within a framework of orderly procedure." *Joiner v. Brown,* 1996 OK 112, ¶ 6, 925 P.2d 888, 890, citing *Pryse Monument Company v. District Court of Kay County,* 1979 OK 71, 595 P.2d 435, 438. " ' * * * It is procedure that spells much of the difference between rule by law and rule by whim or caprice. Steadfast adherence to strict proce-

dural safeguards is our main assurance that there will be equal justice under law." ' *Joiner, supra* at 890 n. 4, quoting from *Joint Anti–Fascist Refugee Committee v. McGrath,* 341 U.S. 123, 179, 71 S.Ct. 624, 652, 95 L.Ed. 817 (1951) (Douglas, J., concurring).

**38.** *Reynolds, supra* note 36 at 822.

**39.** *Id.*